UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AZZA EID, AMRE R. GINENA, NAHID I. GINENA, REDA A. GINENA, SABRINA KOBERT, M. AMIR MANSOUR, HEBA NAMZI, NAMZI M. NAMZI, and M. MAGDY H. RASIKH, <br><br> Plaintiffs, <br><br> vs. <br><br> ALASKA AIRLINES, INC., <br><br> Defendant. | 2:04-CV-01304-RCJ-(LRL) <br><br> **ORDER** |

This matter coming before the Court on Plaintiffs' Motion for Leave to File and Serve Supplemental Complaint (# 56) filed on December 1, 2005, and Defendant's Motion for Summary Judgment (#58) filed December 2, 2005. The Court has considered the Motions, the pleadings on file, and oral arguments on behalf of the parties. IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to File and Serve Supplemental Complaint (#56) is *denied*, and Defendant's Motion for Summary Judgment (#58) is *granted*.

**FACTS**

On September 29, 2003, all nine Plaintiffs boarded an international flight in Vancouver, British Columbia, bound for Las Vegas. All nine passengers were flying together and seated in the first-class section of the aircraft. Due to an in-air incident involving the Plaintiffs, the flight was diverted to Reno, Nevada. Upon landing in Reno, all nine Plaintiffs

were ordered to leave the aircraft by employees of Defendant.

As a result of this incident and subsequent events, Plaintiffs filed a Complaint with the Court on September 17, 2004, alleging five causes of action: (1) damage due to delay under the Warsaw Convention, Article 19, (2) defamation due to the filing of a false criminal report, (3) defamation in the form of slander, (4) intentional infliction of emotional distress, and (5) invasion of privacy / false light.

On January 5, 2005, the Court held that the Warsaw Convention preempted Plaintiffs' state law claims, and granted Defendant Alaska Airlines' Motion to Dismiss Plaintiffs' second, third, fourth, and fifth causes of action, with leave to amend.

Plaintiffs filed an Amended Complaint (#22) on January 20, 2005. On May 16, 2005, the Court granted Defendant's Motion to Dismiss the Amended Complaint (#22) maintaining that Plaintiffs' second, third, fourth, and fifth claims for relief were still preempted by the Warsaw Convention.

Plaintiffs' instant Motion seeks leave to file a supplemental complaint alleging seven new causes of action (claims 6–12), all for defamation, and allegedly arising since Plaintiffs' Amended Complaint was filed. All of the new proposed causes of action arise from publications or republication of alleged defamatory statements made by Defendants regarding Plaintiffs' involvement in the in-air incident.

Defendants' instant Motion for Summary Judgment (#58) was filed one day after Plaintiffs' Motion for Leave to File Supplemental Pleadings (#56). Defendant seeks summary judgment for Plaintiffs' remaining Warsaw Convention Claim under the terms of the Tokyo Convention. Defendants allege that any action taken by an in-command pilot or captain to preserve the good order and discipline on board an aircraft is precluded from liability.

Plaintiffs, in opposition contend that the Captain's actions do not meet the Tokyo

Convention's reasonableness requirement, or at least create a question of material fact as to reasonableness that does not overcome the summary judgment standard.

## DISCUSSION

Defendants argue that Plaintiffs' Motion for Leave to File Supplemental Pleadings (#56) should be dismissed for several reasons. First, because all of the newly alleged defamatory statements occurred well before the date of Plaintiffs' Amended Complaint, and because the statute of limitations on the newly alleged defamation claims has expired; second, because Plaintiffs have no current pleadings for defamation before the Court that they can supplement; and third, because the additional causes of action are futile. In opposition, Plaintiffs contend that Defendants purposefully suppressed material evidence, which under the discovery rule, defers the accrual of Plaintiffs' causes of action for defamation.

**I. Supplemental Pleadings**

Both parties to this litigation stipulated that any motions to amend the pleadings must be filed by October 11, 2005. Under Rule 16(b), a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." Defendants contend that Plaintiffs, upon realizing that the date to file amended pleadings had expired, disingenuously fashioned their instant Motion as one to supplement their complaint under Rule 15(d) rather than to amend their complaint under Rule 15(a).

Additionally, Defendants attack Plaintiffs' attempt to supplement prior pleadings because the original complaint no longer contains a cause of action for defamation, thereby rendering Rule 15(d) inapplicable. As stated above, this Court granted Defendant's Motion to Dismiss Plaintiffs' second, third, fourth, and fifth causes of action, after having previously granted Plaintiffs leave to amend. Defendants contend therefore, that proposed supplemental

pleadings introduce new claims, which are not allowable under Fed. R. Civ. P. 15(d).

**A. Statements Made Prior to Filing of Amended Complaint**

Fed. R. Civ. P. 15(d) gives a court discretion to allow a party to serve supplemental pleadings to set forth "transactions . . . occurrences, or events which have happened since the date of the pleading sought to be supplemented." Rule 15(d) states:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.

Though permitting supplemental pleadings is "favored," Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988), Rule 15(d) permits the filing of a supplemental pleading only if the pleading introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed. Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir. 1998) (quoting Planned Parenthood v. Neely, 130 F.3d 400, 402 (9th Cir. 1997). Furthermore, Rule 15(d) may not be used to introduce a "separate, distinct and new cause of action." Planned Parenthood, 130 F.3d at 402 (citing 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil 2D § 1509 (1990) (noting that leave to file a supplemental pleading will be denied where "the supplemental pleading could be the subject of a separate action")).

In Cabrera, Plaintiffs' supplemental claim was for malicious prosecution, obviously accruing after his original complaint was filed. 159 F.3d at 382. Here however, Plaintiffs' supplemental claims allege defamatory statements occurred prior to the date of the Supplemental Complaint.

The statute of limitations for defamation in Nevada is two years and begins to run on

publication. See N.R.S. 11.190(4)(c). Here, the alleged defamatory statements were made between September 29, and October 3, 2003. (Pl.'s Mot. for Leave to File Supplemental Pleadings.) Plaintiffs' original Complaint was filed on September 17, 2005, and their Amended Complaint was filed on January 1, 2005. Clearly, any causes of action for defamation in regard to these statements were in existence when both the original and amended complaints were filed. Therefore, Rule 15(d) precludes Plaintiffs' defamation claims.

**B. New Defamation Claims**

As stated above, on May 16, 2005, this Court dismissed Plaintiffs' amended defamation claims because said claims were preempted by the Warsaw Convention. Therefore, Plaintiffs' only remaining claim is for damages for delay under Article 19 of the Warsaw Convention. Plaintiffs' immediate attempt to supplement their Complaint with seven new defamation causes of action seeks to introduce separate, distinct, and new causes of action, which the Court is precluded from allowing under Planned Parenthood. 130 F.3d at 402.

**C. Discovery Rule & Statute of Limitations**

Plaintiffs argue that the accrual of their proposed defamation claims is deferred by application of the discovery rule. As stated above, the statute of limitations for defamation in Nevada is two years and begins to run on publication. N.R.S. 11.190(4)(c). An exception to the general statute of limitations rule however is the "discovery rule," under which "the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action." Peterson v. Bruen, 792 P.2d 18, 20 (Nev. 1990); see also, Cusano v. Klein, 264 F.3d 936, 949 (9th Cir. 2001). Application of the

discovery rule requires that plaintiffs exercise reasonable diligence to discover facts regarding the cause of action. Siragusa v. Brown, 971 P.2d 801, 807 (Nev. 1998) ("Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars within their reach.").

The Ninth Circuit has held that the application of the discovery rule is a task best suited for a jury, and may be decided as a matter of law only when uncontroverted evidence irrefutably demonstrates the plaintiff discovered or should have discovered the fraudulent conduct. See Nevada Power Co. v. Monsanto Co., 955 F.2d 1304, 1307–1308 (9th Cir. 1992). In Flowers v. Carville, 292 F. Supp. 2d 1225, 1234 (D. Nev. 2003), this Court held that the discovery rule applied in determining the accrual of a claim for conspiracy to defame. The Court in Flowers denied summary judgment on certain conspiracy to defame counts because "the evidence does not irrefutably prove when [plaintiff] knew or should have known she had a cause of action that met the actual malice standard against these Defendants." Id.

Here, the pleadings irrefutably demonstrate that Plaintiffs should have, and would have, discovered the evidence leading to its supplemental claims had it exercised reasonable diligence at discovery. Plaintiffs were on notice at the time of the incident—two years prior to their filing of supplemental claims—that Alaska Airlines had reported the Plaintiffs' behavior on flight 694 to law enforcement. Plaintiffs could have requested Alaska Airlines' opinions and internal statements regarding Plaintiffs or flight 694 at any time following the incident. Instead, Plaintiffs waited until the eleventh hour under the defamation statute of limitations to demand the documents at issue.

Further evidence of Plaintiffs' lack of diligence in the discovery process includes Plaintiffs' delay in participating in a Rule 26 conference. When Plaintiffs propounded discovery on August 18, 2005, Defendants requested a protective order because certain requested documents contained what they held to be sensitive, confidential, and proprietary information. Defendants sent Plaintiffs a proposed stipulated protective order, yet Plaintiffs waited over a month to review and sign said order.

Plaintiffs reasonably should have discovered the statements made by Alaska Airlines before the two year statute of limitations. Plaintiffs' late hour request evinces their failure to exercise reasonable diligence in seeking discovery. Therefore, it is neither reasonable nor required that this Court apply the discovery rule to Plaintiffs' supplemental pleadings.

**D. Futility**

Defendant contends that should the Court construe Plaintiffs' Motion as a Motion to Amend rather than a Motion for Supplemental Pleadings, the Court should deny the Motion. Pursuant to the parties' stipulation that all motions to amend the pleadings must be made by October 15, 2005, and due to the expiration of the statute of limitations for defamation discussed above, the Court denies any attempt to amend the pleadings or to construe the immediate Motion as a motion to amend at this time.

**II. Summary Judgment**

Defendant seeks that the Court grant summary judgment for Plaintiffs' remaining Warsaw Convention Claim under the terms of the Tokyo Convention. Defendants allege that any action taken by an in-command pilot or captain to preserve the good order and discipline

on board an aircraft is precluded from liability.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. Northwest Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(c); Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby., Inc., 477 U.S. 242, 248 (1986).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. Anderson, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which

are irrelevant or unnecessary will not be considered. Id. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. Id.

**A. Tokyo Convention**

The Tokyo Convention of 1963 is a federal treaty that addresses a pilot's broad authority to maintain aircraft and passenger safety. Convention on Offenses and Certain Other Acts Committed on Board Aircraft, 20 U.S.T. 2941 ("Tokyo Convention" or "Convention"). The purpose of the Convention was in part to encourage countries to punish both crimes and certain non-criminal acts committed aboard an aircraft. United States v. Georgescu, 723 F. Supp. 912, 915 (E.D.N.Y. 1989).

When a pilot acts in accordance with the Convention, "neither the aircraft commander, or any other member of the crew, any passenger, [nor] the owner or operator of the aircraft . . . shall be held responsible *in any proceeding* on account of the treatment undergone by the person against whom the actions were taken." Tokyo Convention, Art. 10 (emphasis added).

The Convention applies both to penal offenses and to "acts which, whether or not they are offences, may or do jeopardize . . . good order and discipline on board." Tokyo Convention, Art 1 ¶ 1(b). It entrusts the safety of the aircraft to the reasonable judgment of the pilot-in-command, stating:

> The aircraft commander may, when he has reasonable grounds to believe that a person has committed, or is about to commit, on board the aircraft, an offence or act contemplated in Article 1, paragraph 1, (acts which whether or not they are offences, may or do jeopardize the safety of the aircraft or . . . good order and discipline on board) impose upon such person reasonable measures including restraint which are necessary: (a) to protect the safety of the aircraft, or of the persons or property therein, (b) to maintain good order and discipline on board; or (c) to enable him to deliver such persons to competent authorities or to disembark him in accordance with the provisions of this Chapter.

Tokyo Convention, Art. 6 ¶ 1 (Including the ability to disembark passengers under Art. 8).

Defendant proffers evidence that the Captain's decision to disembark the Plaintiffs was reasonable given the circumstances surrounding his decision. The Captain's written statement to officials at the Reno-Tahoe airport states that he "was advised by cabin crew that passengers were congregated near the flight deck door and they would not stop doing it when ordered. She said things were getting out of hand. I decided to land the jet at the nearest airport. We requested police intervention." (Pl.'s Opp. at 4.) In his post-flight report to the airline, the Captain repeated the basic charges he had made to the Reno-Tahoe airport police.

The Captain's account states that he received a call from the first flight attendant advising that she was having trouble with some first class passengers and that she was requesting that law enforcement meet the plane when it landed in Las Vegas. In his deposition, the Captain added that at the time of the first call he asked "is there anything urgent I need to know?" to which the flight attendant replied, "No I think I've got it under control." (Pl.'s Opp. at 5.)

The Captain also testified that he received a second phone call in which he described the flight attendant as "in hysteria" and stated "it sounded like she was crying." The flight

attendant reported to the Captain that she had "lost control" of the first class cabin. (Def.'s Mot. for Summ. J. Ex. A 96:1–23, deposition Ex. 16, p.2.) At this point, the Captain heard "a bunch of yelling and screaming" coming through the interphone. (Id. at 96:15–16, 24–25.) Having "never heard anything like that in [his 26 year] career," (Id. at 96:25–97:1), the Captain decided to put the airplane on the ground as soon as possible, and disembarked to Reno.

Plaintiffs contend that given the account of what happened on board flight 694 by flight attendants and other witnesses, the Captain's decision to disembark the plane was not reasonable or necessary. Essentially, Plaintiffs argument, according to said statements, is that though an altercation ensued between some, or one, of the Plaintiffs and a flight attendant—in which one of the Plaintiffs was afoot near the plane's galley and front deck door—upon being asked to sit, all Plaintiffs comported with the flight attendants orders and returned to their seats.

Plaintiff proffers testimony by the flight's first officer that had the Captain peered through the cabin portal window and seen all passengers had taken their seats as directed, and were just arguing, that a "less direct" response than diverting the aircraft would have been appropriate.

**B. Application**

The critical inquiry here is whether the Captain had reasonable grounds to believe that a person on board the aircraft had committed "an act which may jeopardize the safety of the aircraft . . . or good order and discipline on board." Tokyo Convention, Art. 1, 6. What the

flight attendant or First Officer would have done, the relationship a pilot had with his crew, queries regarding what the Captain *could have done* in the situation—such as calling the flight attendant one more time, or getting up and peering through the portal door—are not relevant to the question at hand.

Given the circumstances in the cockpit as described, it is more than obvious both subjectively and objectively, that the Captain had reasonable grounds to disembark to the nearest available airport. Reasonable minds, given even a cursory examination of all of the facts and circumstances of this matter could not differ in concluding that the Captain had reasonable grounds for his decision. Therefore, no genuine issue of material fact exists. Defendant Airline and its employees are precluded from liability under Article 10 of the Tokyo Convention, and Defendant's Motion for Summary Judgment (#58) in regards to the Warsaw Convention claim is granted.

### III. CONCLUSION

Therefore, IT IS HEREBY ORDERED that Plaintiffs' Motion for Leave to File Supplemental Pleadings (#56) is *denied*.  IT IS ALSO ORDERED that Defendants' Motion for Summary Judgment (#58) is *granted*.

DATED: June 15, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE