1
2
3
4              **UNITED STATES DISTRICT COURT**
5                    **DISTRICT OF NEVADA**
6
7  REDA A. GINENA et al.,                  )
                                           )
8              Plaintiffs,                 )
                                           )          2:04-cv-01304-RCJ-CWH
              vs.                          )
9                                          )
   ALASKA AIRLINES, INC.,                  )              **ORDER**
10                                         )
              Defendant.                   )
11 _____)

12          This case arises out of an altercation on an international passenger flight.  Pending before

13  the Court is a Motion for Certificate of Appealability (ECF No. 157).  For the reasons given

14  herein, the Court denies the motion.

15  **I.      FACTS AND PROCEDURAL HISTORY**

16          The nine Plaintiffs in this case are citizens of Canada, Germany, and Egypt who on

17  September 29, 2003 were traveling with Defendant Alaska Airlines, Inc. ("AA"), a Washington

18  corporation, from Vancouver to Las Vegas in order to attend an energy industry convention.

19  About one hour into the flight, the pilot diverted the plane to Reno after a flight attendant

20  informed him that she had lost control of the passengers.  Security officials at the Reno Airport

21  cleared Plaintiffs to continue and indicated they were not a security threat, but the pilot refused

22  to fly with them onboard, so they were removed.  Plaintiffs allege that they were not unruly and

23  made no threats, but that the flight crew treated them poorly because of its perception of their

24  Arab ethnicity and Muslim religion.  The diversion caused Plaintiffs to miss important business

25  opportunities.  Furthermore, Plaintiffs allege that the pilot and other employees of AA defamed

1    them by reporting them to the authorities, contacting another airline in a failed attempt to prevent

2    them from traveling on that airline, and made defamatory announcements over the public address

3    system of the plane to the remaining passengers after Plaintiffs were forced to disembark.

4          The Amended Complaint ("AC") lists five causes of action.  The Court dismissed all

5    claims as preempted by the Warsaw Convention, except of course the first claim under the

6    Warsaw Convention itself, and later granted summary judgment to Defendant against the

7    Warsaw Convention claim.  The Court of Appeals affirmed in part, reversed in part, and

8    remanded.  The court reversed summary judgment on the Warsaw Convention claim, ruling that

9    the reasonableness of the pilot's actions could not be determined on summary judgment.  The

10   court affirmed dismissal of the state law claims except as to the defamation claim insofar as the

11   claim arose out of conduct that occurred after Plaintiffs departed the aircraft, which conduct was

12   outside the scope of the Warsaw Convention's preemptive force.  The court therefore remanded

13   for trial on the Warsaw Convention claim and any defamation claims arising after Plaintiffs

14   departed the aircraft.  The Court of Appeals also affirmed the Court's denial of Plaintiffs' motion

15   to amend the complaint under Rule 15(d), but noted that the Court should consider amendment

16   to add more defamation claims under Rule 15(a) if Plaintiffs so moved.  The court noted that

17   even though the two-year statute of limitations may have run on these new defamation claims,

18   the question of equitable tolling should not be decided on dispositive motion in this case but

19   should be put to the jury as an affirmative defense.

20         Plaintiffs moved to amend the AC to add new defamation claims.  The Court denied the

21   motion.  Plaintiffs have now moved for a certificate of appealability pursuant to 28 U.S.C.

22   § 1292(b).

23   **II.   LEGAL STANDARDS**

24         A court of appeals may grant interlocutory appellate review of an issue without staying

25   proceedings below when a district judge notes in the relevant order that he believes such review

is merited:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). A district court cannot itself grant interlocutory review under this statute. A court of appeals may do so in its discretion, but only if the district court's order contains the required language. *See id.* The "certificate of appealability" sought is an amendment to the Court's order denying leave to amend, to the effect that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

**III.  ANALYSIS**

Plaintiffs moved to add defamation claims arising out of the following post-debarkation conduct: the filing of a criminal complaint against Plaintiffs; an email from AA's director of security to other AA mangers concerning the incident; emails from an AA "executive" and an AA "management employee" to other AA employees concerning the incident; and the publication of information concerning the incident in an AA newsletter distributed to its pilots. The Court denied the motion.

First, the Court found that Plaintiffs had admitted facts indicating that the statute of limitations ran on any defamation claim arising out of AA's criminal complaint when they alleged that they were arrested within days based upon that criminal complaint. (*See* Proposed Second Am. Compl. ("PSAC") ¶ 34, June 4, 2011, ECF No. 138-1). The Court reasoned that Plaintiffs could not rely on the discovery rule to toll the statute of limitations in such

1    circumstances.  And because this admission of facts appeared on the face of the PSAC, no

2    further fact-finding was necessary to resolve the issue. *See Hyatt Chalet Motels, Inc. v.*

3    *Carpenters Local 1065*, 430 F.2d 1119, 1120 (9th Cir. 1970).  In the present motion, Plaintiffs

4    make no attempt to address the Court's reasoning but baldly assert that the certification

5    requirements are satisfied.  And even assuming *arguendo* that equitable tolling applied, the

6    Court previously dismissed the defamation claim insofar as it arose out of the criminal complaint

7    as preempted by the Warsaw Convention, because the claim arose out of pre-disembarkation

8    conduct under the Ninth Circuit's "total circumstances" test announced in *Maugnie v.*

9    *Compagnie Nationale Air France*, 549 F.2d 1256 (9th Cir. 1977). (*See* Order, June 20, 2005,

10   ECF No. 42; Mot. Dismiss 5–7, Feb. 23, 2005, ECF No. 31).  The Court of Appeals affirmed in

11   this regard based on its interpretation of the Warsaw Convention and its construction of the

12   Warsaw and Tokyo Conventions. *See Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 873 (9th Cir.

13   2010) ("It is thus fair to say that the pilot's statements to the police were part of the

14   disembarkation process.  Considering 'the total circumstances surrounding [plaintiffs'] injuries,

15   viewed against the background of the intended meaning of Article 17,' we conclude that the

16   crew's report to the police was covered by the Warsaw Convention." (alteration in original)

17   (citation omitted)).  Therefore, regardless of whether the limitations period for such a claim

18   could be equitably tolled, Plaintiffs should not have attempted to revive this aspect of their

19   defamation claim in their motion to amend.

20         Second, the Court noted that intra-corporate statements simply do not constitute

21   "publications" under Nevada's defamation law. *See Simpson v. Mars Inc.*, 929 P.2d 966, 967–68

22   (Nev. 1997).  Although this doctrine is an affirmative defense in Nevada, *see id.* at 968, the

23   affirmative defense appeared on the face of the PSAC in each circumstance, (*see* PSAC ¶¶ 48,

24   54, 60, 66, 71), so no further fact-finding was necessary to resolve the issue, *see Hyatt Chalet*

25   *Motels, Inc.*, 430 F.2d at 1120.  Again, Plaintiffs make no attempt to address the Court's

1  reasoning but simply assert that the certification requirements are satisfied. The Court will not

2  certify this issue.

3      The *Simpson* Court's demand for further fact-finding concerning the intra-corporate

4  nature of the alleged defamatory statements was born of the particular circumstances of that case.

5  Simpson worked directly for Kelly Temporary Services ("Kelly"), which assigned her to a

6  chocolate factory, Ethel M. Chocolates ("Ethel M."), a subsidiary of Mars. *Simpson*, 929 P.2d at

7  967. Simpson's supervisor at Kelly later informed Simpson of her termination from Kelly based

8  on reports that Simpson had sexually harassed a co-worker at Ethel M. *Id.* The Nevada Supreme

9  Court affirmed the trial court's dismissal of all of Simpson's claims against Mars except the

10  claim for defamation, because the intra-corporate nature of the alleged defamatory statements

11  was unclear. *See id.* at 968 ("The circumstances of the communication of the allegedly

12  defamatory material are uniquely within the knowledge of the corporation and its agents. It is

13  unfair to put the burden on the plaintiff to determine and allege the circumstances of

14  communication within the corporation before she can make a prima facie case. Therefore, the

15  circumstances of communication are more appropriately an element of the defense to an action

16  of defamation rather than an element of the plaintiff's prima facie case."). In *Simpson*, Kelly

17  terminated Simpson not just from the Ethel M. assignment but as a Kelly employee altogether,

18  *see id.* at 967, because of communications by Ethel M. to Kelly. It was a question of fact

19  whether such communications were "intra-corporate." Although Simpson had not specifically

20  pled extra-corporate communications, the likelihood that the subject communications were in

21  fact purely intra-corporate were impossibly small. After all, if the communications had been

22  made purely within Ethel M., then Kelly, an outside agency with no corporate relation to either

23  Ethel M. or Mars, would never have learned of the incident and terminated Simpson because of

24  it, and the lawsuit would never have arisen. Under the circumstances of that case, it was nearly

25  certain that an agent of Ethel M. or Mars had informed Kelly of the allegations against Simpson.

1   It was for the defendant to prove otherwise, not for the plaintiff to plead as a part of her prima

2   facie case.

3        Here, by contrast, Plaintiffs specifically allege in the PSAC that the subject

4   communications were made between AA's own employees.  Plaintiffs in fact note that discovery

5   provided by AA is the only reason they even became aware of such communications.  The only

6   outside communications they allege or even imply are: (1) the discovery provided between the

7   parties' attorneys; and (2) Plaintiffs' own attorneys' republication of the material via subsequent,

8   post-discovery pleadings in this case.  In *Simpson*, the trial court had dismissed based on the

9   plaintiff's failure to plead the extra-corporate nature of the communications.  But the plaintiff

10  there had not even had discovery, and the nature of the communications remained solely within

11  the defendant's knowledge.  It was therefore for the defendant to prove the intra-corporate nature

12  of the statements.  This Court has not held Plaintiffs to such a pleading standard.  Plaintiffs have

13  had discovery and have asked the Court for leave to amend based upon full discovery of the

14  nature of the communications.  The proposed amendments, which appear accurately to reflect the

15  evidence discovered, affirmatively allege that the communications were purely intra-corporate.

16  If Plaintiffs have additional evidence to adduce concerning extra-corporate communications by

17  Defendant, they may adduce it in support of a new motion to amend.  However, as it stands,

18  Plaintiffs have had full discovery as to the nature of the alleged defamatory statements, and the

19  intra-corporate nature of those statements appears on the face of the PSAC.

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion for Certificate of Appealability (ECF No.

3  157) is DENIED.

4        IT IS SO ORDERED.

5        Dated this 3rd day of October, 2011.

6                                          _____
                                           ROBERT C. JONES
7                                          United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25