John F. McHugh
SDNY Bar No. JM 1240
Attorney at Law
6 Water St.
New York, NY  10004
212-483-0875

Gilbert Gaynor
Cal. Bar No. 107109
Attorney at Law
820 Arguello Road
Santa Barbara, CA 93103-1816
805-962-5842

Allen Lichtenstein
Nevada Bar No. 3992
3315 Russell Road
Las Vegas, NV 89120
702-433-2666
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| REDA A. GINENA, NAHID I. GINENA, AMRE R. GINENA, SABRINA KOBERT, M. MAGDY H. RASIKH, M. SAMIR MANSOUR, AZZA EID, NAZMI M. NAZMI, and HEBA NAZMI,<br><br>Plaintiffs,<br><br>v.<br><br>ALASKA AIRLINES, INC.<br><br>Defendant. | CV-S-04-1304-RCJ-(LRL)<br><br>SECOND AMENDED COMPLAINT AND JURY DEMAND |

1

Plaintiffs, by their attorneys, John F. McHugh, Gilbert Gaynor and Allen Lichtenstein, complain of the defendant as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) (2) over this matter as the defendant is a corporation organized in one of the States of the United States, the plaintiffs are all citizens and residents of foreign nations, to wit, Canada, Germany, Italy and Egypt, and the amount in issue exceeds the minimum jurisdictional amounts for diversity jurisdiction.

2. This Court further has jurisdiction as this action arises in part under the treaties and laws of the United States, 28 U.S.C. § 1331, to wit the Warsaw Convention (reprinted at 49 U.S.C. § 40105), as a part of the actions giving rise to the plaintiffs' claims for relief occurred on an aircraft operating from Vancouver, British Columbia, Canada, to Las Vegas, Nevada.

3. The flight in question was destined for Las Vegas, Nevada, and therefore both jurisdiction and venue in this Court are proper pursuant to Article 28 of the Warsaw Convention.

4. This Court also has jurisdiction over claims asserted under state law pursuant to the Court's supplemental jurisdiction.

### PLAINTIFFS

5. Reda A. Ginena is an Arab, a native of Egypt, a Muslim and a citizen of Canada.

6. Nahid I. Ginena is an Arab a native of Egypt, a Muslim and a citizen of Canada.

7. Amre R. Ginena is an an Arab, a native of Egypt, a Muslim and a citizen of Canada and a resident of Italy.

8. Sabrina Kobert is a citizen of Germany and a resident of Italy.

9. M. Magdy H. Rasikh is an Arab and Muslim and is a citizen and resident of Egypt.

10. M. Samir Mansour is an Arab a native of Egypt, a Muslim and a citizen of Egypt.

11. Mrs. Azza Eid is an Arab and Muslim and is a citizen and resident of Egypt.

12. Nazmi M. Nazmi is an Arab, a native of Egypt, a Muslim and a citizen of Canada.

13. Mrs. Heba Nazmi is an Arab, a native of Egypt, a Muslim and a citizen of Canada.

## DEFENDANT

14. Alaska Airlines, Inc. is, on information and belief, a corporation duly organized under the laws of the State of Washington that maintains its principal office in Seattle, Washington 98168

## FIRST CLAIM FOR RELIEF

### (Warsaw Convention, Article 19)

15. Plaintiffs reallege and restate each and every allegation contained in paragraphs 1-14 above as if set forth in full here.

16. On September 29, 2003 the plaintiffs boarded defendant's Flight No. AS 694, leaving Vancouver, British Columbia, Canada at 5:34 PM, as a group traveling together in the first-class section of the aircraft.

17. Each plaintiff boarded the aircraft pursuant to a valid first-class airline ticket issued by or for the defendant Alaska Airlines, each such ticket being a contract for carriage of the individual plaintiff from that Vancouver, BC to Las Vegas, Nevada within the United States of America.

3

18. Pursuant to the contract of carriage the defendant was obligated to carry the plaintiffs via a direct route pursuant to applicable air traffic controls and without unscheduled and unnecessary and avoidable diversions or delays.

19. Plaintiffs' group included several international oil and gas industry executives. The objective of the plaintiffs' trip was to attend an energy industry convention in Las Vegas and specifically to attend a meeting that evening, September 29, 2003, for the purpose of making contacts with industry officials in North America, an opportunity open to them only during that first evening of the convention.

20. About one hour into the flight, about 65 miles South East of Reno Nevada, within the District of Nevada, United States, the defendant's flight crew, without cause or justification, diverted the airliner from its course and schedule, to an unscheduled landing in Reno, Nevada.

21. At Reno, Nevada the defendant without cause or justification directed the plaintiffs to leave the aircraft. Thereafter, the defendant refused to carry the plaintiffs on to their scheduled and contracted destination.

22. Defendant's actions were based upon the discriminatory animus of its cabin crew directed at the plaintiffs, whom the cabin crew perceived to be Arab and Muslim. After the aircraft was on the ground and the plaintiffs had deplaned, the actions of the aircraft's crew were ratified and adopted as company policy by the defendant's management.

23. The defendant's flight crew-employees, and after arrival at Reno, the defendant's corporate personnel acted with animus toward plaintiffs due to the plaintiffs' race, ethnicity, national origin, and/or religion, or presumed race, ethnicity, national origin, and/or religion as a matter of company policy.

24. Defendant's diversion of the flight and refusal to carry the plaintiffs to their destination significantly delayed the plaintiffs' passage, without excuse or cause beyond the defendant's control.

25.     The plaintiffs' late arrival caused the plaintiffs to miss important business opportunities and to render their trip and the investment therein wasted, and caused legally cognizable inconvenience and expenses for substitute air transportation.

26.     By reason of the above delay, the plaintiffs have been injured in amounts which cannot be stated with precision at this time.  However, as the defendant's actions were malicious due to unlawful discrimination and constituted willful misconduct, the limitations of the Warsaw Convention should not apply as to the damages of any of the plaintiffs which exceed the monetary limits imposed by that treaty for damages due to delay.

## DUE DILIGENCE AND TIMELINESS

27.  As to the second and fourth through ninth claims for relief set forth herein, plaintiffs have been diligent in pursuing the wrongs arising from the matters alleged in the underlying complaint which this complaint amends.  Plaintiffs undertook a diligent pre-filing investigation of this matter, filed this action more than one year prior to the expiration of the applicable two-year statute of limitations, have complied with all applicable time limits, and on August 18, 2005, timely sent out discovery requests.  If defendant had timely and properly responded to plaintiffs' discovery requests with the production of all responsive documents as required by rule 34 of the Federal Rules of Civil Procedure, such response would have allowed plaintiffs the opportunity to file this second amended complaint to allege the causes of action alleged herein within the applicable two-year limitations period for each act of defamation herein alleged and prior to the expiration of the time period within which to amend the pleading set forth in the Court's original scheduling order.

28.  Defendant, by failing to fully respond in a timely manner as required by law to plaintiffs' first set of requests for production of documents in this action, served by plaintiffs on August 18, 2005, concealed and suppressed the fact that the malicious conduct, complained of herein, arising from the transaction which occurred on September

29, 2003, continued for several days thereafter, due to the fact that the malice its flight crew was adopted as company policy by defendant. Defendant failed to provide documents within the time required by law which would have revealed facts giving rise to the second and fourth through ninth claims for relief until November 7 and 17 of 2005 when such documents were produced by defendant, after the statute of limitations relating to this conduct as separate actions expired and after the time set in the Court's scheduling order had expired.

29. Because plaintiffs could not have discovered through the exercise of reasonable diligence the facts giving rise to the second and fourth through ninth claims for relief herein, due to defendant's concealment and suppression of the existence and authorship of the defamatory publications alleged herein, and because the acts of defamation herein were within defendant's knowledge and plaintiffs had no other reasonable means of ascertaining those facts, the causes of action did not even accrue, and the applicable statute of limitations did not even begin to run, under controlling law, until November 7, 2005 with respect to the second, fifth, sixth and seventh claims for relief, and until November 17, 2005 with respect to the fourth, eighth and ninth claims for relief. As the specific acts complained of herein arise out of the conduct, transaction and occurrences set forth or attempted to be set forth in the original complaint, the second and fourth through ninth claims for relief relate back to the date of the original complaint. Accordingly, these causes of action are timely plead.

**SECOND CLAIM FOR RELIEF**

**(Defamation)**

30. Plaintiffs re-allege and restate each and every allegation contained in paragraphs 1- 29 as if set forth here in full.

31. On or about September 30, 2003 the defendant, maliciously filed a criminal complaint against the plaintiffs, falsely alleging that they had interfered with the defendant's flight crew during the flight in question, in violation of 49 U.S.C. § 46504

6

and/or that the plaintiffs were terrorists. As a common carrier by air the defendant is charged with enforcing the statutes applicable to passengers aboard its aircraft, and had the obligation to know their terms.  Defendant was fully aware, due to being advised of the conclusion of the Reno-Tahoe Airport Police and the Transportation Security Administration, that no basis existed to believe plaintiffs had committed a "serious offence."  In addition defendant unreasonably failed to confirm its flight crew's report.  In addition there were no grounds for believing that plaintiffs had violated 49 U.S.C. § 46504, even accepting everything the flight crew reported.  Instead of discharging its responsibilities to the plaintiffs as a common carrier the defendant adopted the discriminatory animus of its flight crew as a company policy of malice toward the plaintiffs due to their ethnicity, national origin and religion.

32. This criminal complaint was malicious, completely unfounded and was made due to the race, ethnicity, national origin, and/or religion of the plaintiffs or the perception thereof by the defendant's employees.  It comprised defamation per se.

33. As the result of the slander and defamation in the false complaint, a full investigation of each of the plaintiffs was conducted by the Federal Authorities which, on information and belief, included an investigation of each plaintiff conducted by local police or security agencies in their places of citizenship and residence, generating a record of each plaintiff as a possible terrorist.

34. As the result of that complaint the plaintiffs were taken into custody, marched through a crowded public lobby and then interviewed at length by law enforcement representatives at their lodgings at the Bellagio Hotel in Las Vegas subjecting them to further humiliation and, further diverting them from the business purposes of their trip, and plaintiffs were questioned at length about activities on the aircraft, and about specific activities knowable only as the result of investigations conducted at the plaintiffs' places of citizenship and residence.

35. By reason of the above the plaintiffs have been harassed, their reputations have been injured, and they have been caused to limit all travel to the United States to that necessitated by business, barring all plaintiffs from all the benefits available to visitors of their economic means within the United States. Additionally, plaintiffs have suffered emotional distress.

36. By reason of the above each plaintiff has been damaged in a sum which is estimated to exceed the jurisdictional limits of this court. Further, and in light of the fact that the false report was due to discrimination against the plaintiffs based on race, national origin, ethnicity and/or religion, the defendant's actions were malicious, fraudulent and oppressive, and the plaintiffs should be entitled to an award of punitive damages in a sum to be set by the jury.

**THIRD CLAIM FOR RELIEF**

**(Defamation)**

37. Plaintiffs reallege and restate each and every allegation contained in paragraphs 1-36 as if set forth here in full.

38. In addition to persisting in filing a false report of a crime against the plaintiffs, as a part of the same transaction and in a continuation of the conduct arising there from, the defendant's personnel made an announcement to all passengers on the aircraft that the flight had been diverted and delayed due to a disturbance created by the plaintiffs. That announcement was made after the results of the initial investigation were known and at a time when the defendant's crewmembers were well aware that no disturbance had occurred which justified any diversion of the flight and that the incident was traceable solely to the discriminatory actions of the cabin crew of the aircraft. The announcement occurred after the aircraft had returned to the air without the plaintiffs.

39. The actions of the defendant's employees were caused by animosity directed at the plaintiffs' predominant ethnic and religious group, Arab and Muslim.

40. Defendant's statements constituted defamation per se, because they imputed the commission of a crime to plaintiffs. Moreover, defendant's actions were malicious as defendant's staff knew at the time that the false statement was made that it was false and that it would cause distress to the plaintiffs and to damage the reputations of the plaintiffs with other persons, including other passengers, many of whom had a common destination with the plaintiffs and were to attend the same convention and/or stay in the same hotel as the plaintiffs. Plaintiffs have, as a result, suffered injury to their reputations, embarrassment and emotional distress.

41. By reason of the above each plaintiff has each been injured in a sum which is estimated to exceed the minimum jurisdictional limits of the Court. Because defendant's actions were malicious, fraudulent and oppressive, the plaintiffs should be awarded punitive damages in a sum to be set by the jury.

## FOURTH CLAIM FOR RELIEF

### (Defamation)

42. Plaintiffs reallege and restate each and every allegation contained in paragraphs 1-41 above as if set forth here in full.

43. On September 29, 2003, after the plaintiffs were no longer passengers on Flight 694 and were in the Reno/Tahoe Airport, the defendant contacted American West Airlines, falsely informing the America West that plaintiffs had interfered with a flight crew, and asked that carrier not to carry the plaintiffs from Reno, NV to Las Vegas NV. On information and belief, the information conveyed to America West was defamatory per se, as it falsely imputed to the plaintiffs the commission of a federal felony.

44. The defamation was published with malice, animosity, hatred, spite and ill will toward plaintiffs, and with the knowledge that it was false and without any reasonable grounds for believing it was true, and defendant knew that competent authorities had investigated the matter and determined there was no cause to believe that plaintiffs had committed any crime, and defendant had no legitimate reason to seek to

interfere with plaintiffs' lawful passage to their original, contracted destination of Las Vegas.

45. As a proximate result of the above-described publication, plaintiffs have suffered loss to reputation, shame, mortification, humiliation and hurt feelings, all to their general damage.

46. The above-described publication was published by the defendant with malice, oppression and fraud, as alleged above, and thus plaintiffs seek punitive or exemplary damages.

## FIFTH CLAIM FOR RELIEF

### (Defamation)

47. Plaintiffs reallege and restate each and every allegation contained in paragraphs 1-46 above as if set forth here in full.

48. On or about September 30, 2003, defendant's Director of Security, Angela Kelly, published an e-mail to Mary Ryding and John Severski, also management employees of defendant, stating in pertinent part: "It shocks me as to why the police don't follow-up on interference with a flight crew."

49. This statement comprised defamation per se, as it falsely imputed to plaintiffs interference with a flight crew that was criminal in nature.

50. The defamation was published with malice, animosity, hatred, spite and ill will toward plaintiffs, and with the knowledge that it was false and without any reasonable grounds for believing it was true, and defendant knew that competent authorities had investigated the matter and determined there was no cause to believe that plaintiffs had committed any crime. Moreover, any reasonable investigation conducted by defendant would have only confirmed this conclusion.

51. As a proximate result of the above-described publication, plaintiffs have suffered loss to reputation, shame, mortification, humiliation and hurt feelings, all to their general damage.

52. The above-described publication was published by the defendant with malice, oppression and fraud, as alleged above, and thus plaintiffs seek punitive or exemplary damages.

### SIXTH CLAIM FOR RELIEF

**(Defamation)**

53.  Plaintiffs reallege and restate each and every allegation contained in paragraphs 1-52 above as if set forth here in full.

54.  On or about September 30, 2003, an executive of defendant, Mary Ryding, published an e-mail to other employees of defendant, stating in pertinent part:  ". . . these are federal crimes and the federal agencies would need to be involved."

55.  This statement comprised defamation per se, as it falsely imputed to plaintiffs interference with a flight crew that was criminal in nature.

56.  The defamation was published with malice, animosity, hatred, spite and ill will toward plaintiffs, and with the knowledge that it was false and without any reasonable grounds for believing it was true, and defendant knew that competent authorities had investigated the matter and determined there was no cause to believe that plaintiffs had committed any crime.  Moreover, any reasonable investigation conducted by defendant would have only confirmed this conclusion.

57.  As a proximate result of the above-described publication, plaintiffs have suffered loss to reputation, shame, mortification, humiliation and hurt feelings, all to their general damage.

58. The above-described publication was published by the defendant with malice, oppression and fraud, as alleged above, and thus plaintiffs seek punitive or exemplary damages.

### SEVENTH CLAIM FOR RELIEF

**(Defamation)**

11

59. Plaintiffs reallege and restate each and every allegation contained in paragraphs 1-58 above as if set forth here in full.

60. On or about September 29, 2003, a management employee of defendant, Dennis Mellen, published an e-mail to other employees of defendant, stating in pertinent part, "We're particularly interested in how the FBI cleared the pax to continue to LAS after 'interfering with a flight crew' and the disposition of or consequences to those pax."

61. This statement comprised defamation per se, as it falsely imputed to plaintiffs interference with a flight crew that was criminal in nature.

62. The defamation was published with malice, animosity, hatred, spite and ill will toward plaintiffs, and with the knowledge that it was false and without any reasonable grounds for believing it was true, and defendant knew that competent authorities had investigated the matter and determined there was no cause to believe that plaintiffs had committed any crime. Moreover, any reasonable investigation conducted by defendant would have only confirmed this conclusion.

63. As a proximate result of the above-described publication, plaintiffs have suffered loss to reputation, shame, mortification, humiliation and hurt feelings, all to their general damage.

64. The above-described publication was published by the defendant with malice, oppression and fraud, as alleged above, and thus plaintiffs seek punitive or exemplary damages.

**EIGHTH CLAIM FOR RELIEF**

**(Defamation)**

65. Plaintiffs reallege and restate each and every allegation contained in paragraphs 1-64 above as if set forth here in full

66. On October 2, 2003 the defendant published a "Chief Pilot Newsletter" which was distributed to many of its employees. After stating that the Reno Airport Police and the TSA "did gather all the pertinent information," the newsletter stated, in pertinent part,

"the TSA and the Reno Airport Police concluded that this was a violation of FAA civil laws only." The statement was untrue, as the Reno Airport Police did not conclude at any time that the passengers had violated any FAA civil laws whatsoever, and informed the Captain only that this was "a civil matter." The newsletter further stated, in pertinent part, "I know many of us feel let down because these people were not arrested and also puzzled and dismayed by the ability these same passengers had as they proceeded to another airline, bought tickets and flew to their original destination." This statement comprised defamation per se, as it falsely imputed to plaintiffs the commission of a crime warranting arrest. The newsletter further stated that "the FBI . . . believes these passengers also violated federal law". If the FBI did indeed opine as stated, that was a republication of the defamation first published by defendant's flight attendants, and was completely false.

   67. The defamation was published with malice, animosity, hatred, spite and ill will toward plaintiffs, and with the knowledge that it was false and without any reasonable grounds for believing it was true, and defendant knew that competent authorities had investigated the matter and determined there was no cause to believe that plaintiffs had committed any crime. Moreover, any reasonable investigation conducted by defendant would have only confirmed this conclusion.

   68. As a proximate result of the above-described publication, plaintiffs have suffered loss to reputation, shame, mortification, humiliation and hurt feelings, all to their general damage.

   69. The above-described publication was published by the defendant with malice, oppression and fraud, as alleged above, and thus plaintiffs seek punitive or exemplary damages.

**NINTH CLAIM FOR RELIEF**

**(Defamation)**

70.  Plaintiffs reallege and restate each and every allegation contained in paragraphs 1-69 above as if set forth here in full.

71.  On October 3, 2003 the defendant re-published the "Chief Pilot Newsletter" of October 2, 2003. After stating that the Reno Airport Police and the TSA "did gather all the pertinent information," the republished newsletter stated, "the TSA and the Reno Airport Police concluded that this was a violation of FAA civil laws only." The statement was untrue, as the Reno Airport Police did not conclude at any time that the passengers had violated any FAA civil laws whatsoever, and informed the Captain only that this was "a civil matter." The newsletter further stated, in pertinent part, "I know many of us feel let down because these people were not arrested and also puzzled and dismayed by the ability these same passengers had as they proceeded to another airline, bought tickets and flew to their original destination." This statement comprised defamation per se, as it falsely imputed to plaintiffs the commission of a crime warranting arrest.

72.  The defamation was published with malice, animosity, hatred, spite and ill will toward plaintiffs, and with the knowledge that it was false and without any reasonable grounds for believing it was true, and defendant knew that competent authorities had investigated the matter and determined there was no cause to believe that plaintiffs had committed any crime. Moreover, any reasonable investigation conducted by defendant would have only confirmed this conclusion.

74.  As a proximate result of the above-described publication, plaintiffs have suffered loss to reputation, shame, mortification, humiliation and hurt feelings, all to their general damage.

75. The above-described publication was published by the defendant with malice, oppression and fraud, as alleged above, and thus plaintiffs seek punitive or exemplary damages.

14

**PRAYER**

Wherefore, the plaintiffs demand judgment in their favor and against the defendant:

ON THE FIRST CLAIM FOR RELIEF

1. For such sum as established by each plaintiff being their individual costs and wasted investment in their trip to Las Vegas, for legally cognizable inconvenience, for costs of substitute transportation, and for such other damages for delay as may be established at trial.

ON THE SECOND CLAIM FOR RELIEF

2. For general damages, and for special damages in such sum as is established, including all costs and fees incurred due to the malicious false charge as well as damages for defamation per se, and damages for injury done to plaintiffs' personal reputations, businesses and ability to freely travel, for emotional distress, and for an award of punitive damages in a sum to be established by the jury.

ON THE THIRD THROUGH NINTH CLAIMS FOR RELIEF

3. For general damages, and for special damages in such sum as is established, including damages for defamation per se, and damages for injury done to plaintiffs' personal reputations, for emotional distress, and for an award of punitive damages in a sum to be established by the jury.

ON ALL CLAIMS FOR RELIEF

4. The costs and disbursements of this action, and any further relief provided by the applicable law.

DATE; June 4, 2011

<pre>
                                            /s/ Allen Lichtenstein

                                           John F. McHugh
                                           SDNY Bar No. JM 1240

                                           Attorneys for Plaintiffs
                                           Attorney at Law
                                           6 Water St.
                                           New York, NY  10004
                                           212-483-0875

                                           Gilbert Gaynor
                                           Cal. Bar No. 107109
                                           Attorney at Law
                                           820 Arguello Road
                                           Santa Barbara, CA 93103-1816
                                           805-962-5842

                                           Allen Lichtenstein
                                           Nevada Bar No. 3992
                                           3315 Russell Road
                                           Las Vegas, NV 89120
                                           702-433-2666
</pre>

**JURY DEMAND**

Plaintiffs request trial by jury.

DATE;  June 4, 2011,

   /s/ Allen Lichtenstein

John F. McHugh
SDNY Bar No. JM 1240

Attorneys for Plaintiffs
Attorney at Law
6 Water St.
New York, NY  10004
212-483-0875

Gilbert Gaynor
Cal. Bar No. 107109
Attorney at Law
820 Arguello Road
Santa Barbara, CA 93103-1816
805-962-5842

Allen Lichtenstein
Nevada Bar No. 3992
3315 Russell Road
Las Vegas, NV 89120
702-433-2666