UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| REDA GINENA, et al., | Case No. 2:04-cv-01304-MMD-CWH |
| Plaintiffs, | ORDER |
| v. | (Motions in Limine – dkt. nos. 283, 284, 286, 288) |
| ALASKA AIRLINES, INC., | |
| Defendant. | (Request to File a Reply Brief to Defendant's Opposition to Motion to Exclude Certain FBI Evidence – dkt. no. 298) |

I.    **SUMMARY**

Before the Court is Defendant Alaska Airlines, Inc.'s ("Alaska Airlines") Motion in Limine to Exclude Evidence and Testimony Related to Medical Causation (dkt. no. 283). Also before the Court are Plaintiffs' Motions in Limine to Exclude Evidence or Comment on Plaintiff Rasikh's Post-Egyptian Revolution Legal Defenses (dkt. no. 284); to Exclude Evidence of an Alleged Incident at a Hotel in Vancouver, Canada (dkt. no. 286); and to Exclude Evidence of FBI Investigation Past October 1, 2003 (dkt. no. 288).

II.    **BACKGROUND**

Plaintiffs are nine passengers who traveled on an Alaska Airlines flight from Vancouver, British Columbia to Las Vegas, Nevada, on September 29, 2003.  Plaintiffs allege that three employees of Defendant Alaska Airlines, a captain and two flight attendants, accused all nine Plaintiffs of criminal interference with an air crew. Defendant's employees diverted the aircraft to Reno, NV, and ejected Plaintiffs from the flight.

Plaintiffs filed their original complaint nearly eight years ago, on September 17, 2004.  On remand from the Ninth Circuit, Plaintiffs filed a Second Amended Complaint ("SAC") on March 19, 2012.  (Dkt. no. 226.)  The SAC contains one cause of action for violation of the Warsaw Convention, Article 19, and eight defamation causes of action. (*Id.*)

## III.   PLAINTIFFS' REQUEST TO FILE A REPLY BRIEF TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE CERTAIN FBI EVDIENCE (dkt. no. 298.)

Plaintiffs filed a Request to File a Reply Brief to Defendant's Opposition to Plaintiffs' Motion to Exclude Certain FBI Evidence.  (Dkt. no. 298.)  Plaintiffs attached the Reply Brief to their Request.  (Dkt. no. 298-1.)  The Reply did not introduce any significant evidence, but merely responded to Defendant's Opposition arguments.  The Reply Brief is too long.  *See* LR 7-4.  It is 24 pages, and Reply Briefs must be 20 pages unless the parties request permission to file excess pages.  *Id.*  Plaintiffs are instructed to abide by the page limitations in the future.  However, the Court found the Reply useful in reaching its ultimate determination on the Motion, and considered portions of the Brief in reaching its conclusion.  Plaintiffs' Request is therefore granted.

## IV.   MOTION IN LIMINE LEGAL STANDARD

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." Black's Law Dictionary 1109 (9th ed. 2009).  Although the Federal Rules of Evidence ("FRE") do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999).  Judges have broad

2

1   discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316

2   F.3d 663, 664 (7th Cir. 2002).  However, a motion in limine should not be used to resolve

3   factual disputes or weigh evidence. *See C & E Servs., Inc., v. Ashland, Inc.*, 539 F.

4   Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the

5   evidence must be inadmissible on all potential grounds." *See, e.g., Ind. Ins. Co. v. Gen.

6   Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).  "Unless evidence meets this high

7   standard, evidentiary rulings should be deferred until trial so that questions of

8   foundation, relevancy and potential prejudice may be resolved in proper context."

9   *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This

10  is because although rulings on motions in limine may save "time, costs, effort and

11  preparation, a court is almost always better situated during the actual trial to assess the

12  value and utility of evidence."  *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D.

13  Kan. 2007).

14      In limine rulings are provisional. Such "rulings are not binding on the trial judge

15  [who] may always change his mind during the course of a trial."  *Ohler v. United States*,

16  529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings

17  are always subject to change, especially if the evidence unfolds in an unanticipated

18  manner).  "Denial of a motion in limine does not necessarily mean that all evidence

19  contemplated by the motion will be admitted to trial.  Denial merely means that without

20  the context of trial, the court is unable to determine whether the evidence in question

21  should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

22  **V.    DEFENDANT'S MOTION TO PRECLUDE PLAINTIFFS OR LAY WITNESSES
        FROM PROVIDING MEDICAL OR EXPERT TESTIMONY REGARDING THE**
23  **CAUSE OF PLAINTIFFS' MEDICAL OR MENTAL CONDITIONS (dkt. no. 283.)**

24      Six of the nine plaintiffs claim they suffered a variety of ailments as a result of the

25  September 29, 2003, incident and its aftermath.  Defendant argues that none of these

26  Plaintiffs have produced medical documents or a written doctor opinion regarding their

27  medical ailments.  Defendant requests that the Court preclude Plaintiffs from testifying

28  ///

1   regarding the cause of Plaintiffs' ailments, as well as any statements Plaintiffs' doctors

2   told them to that effect.

3        Plaintiffs inform the Court that they do not intend to testify as to their injuries

4   based on scientific, technical, or other specialized knowledge.  Nor do Plaintiffs intend to

5   testify to statements their doctors made to them.

6        Plaintiffs may, of course, testify regarding physical, mental, or emotional

7   symptoms they have experienced under Fed. R. Evid. 601.  In fact, "a lay witness" may

8   testify about "her personal knowledge about the emotional distress, the time of its onset,

9   and its symptoms, which may be used by the finder of fact to find the requisite causation,

10  if it exists."   *Boren v. Harrah's Entm't Inc.*, No. 2:08-CV-00215, 2010 WL 4340641, at *2

11  (D. Nev. Oct. 26, 2010).  Plaintiffs may not testify regarding the medical cause of their

12  ailments.  However, "[j]ust because a lay witness cannot testify about his opinion as to

13  the causation of the emotional distress does not mean that a plaintiff cannot testify about

14  the surrounding facts which prove a causal link between the alleged wrong and the

15  alleged damage, even without an expert."  *Id.*

16       Therefore, Defendant's Motion is granted in part.  Plaintiffs may not testify as to

17  the medical cause of their ailments, nor may they testify about statements their doctors

18  made to them.  Plaintiffs may testify regarding factual matters and opinions within their

19  personal knowledge, including emotional, mental, and physical symptoms they

20  personally suffered.  *See Boren*, 2010 WL 4340641, at *2.

21       Further, in footnote 1 of its Motion, Defendant moves to preclude testimony from

22  Dr. Julieta Guevara under Fed. R. Civ. P. 37, because Ms. Guevara was not properly

23  disclosed to Defendant.  "A footnote is the wrong place for substantive arguments on the

24  merits of a motion . . .," *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*,

25  569 F. Supp. 2d 929, 935 (N.D. Cal. 2008), and is similarly the wrong place to make a

26  motion.  This Motion is denied.

27  ///

28  ///

4

**VI.    PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE REGARDING PLAINTIFF M. MAGDY H. RASIKH'S POST-EGYPTIAN REVOLUTION LEGAL DIFFICULTIES (dkt. no. 284.)**

Plaintiff Rasikh may not appear at trial.  He has been sentenced to five years in an Egyptian prison, and currently cannot travel.  Plaintiffs request that the Court preclude Defendant from introducing evidence regarding the reasons for Rasikh's absence, if he does not appear at trial.  Should Rasikh appear at trial, Plaintiffs request that the Court preclude Defendant from introducing evidence of Rasikh's post-Egyptian Revolution legal difficulties.  Plaintiffs bring their Motion under Fed. Rs. Evid. 402 and 403.

Defendant states that it does not currently intend to introduce evidence of Rasikh's *in abstentia* conviction given the due process concerns surrounding the conviction.  However, Defendant requests that the Court decline from making a ruling on this matter until trial, because the Court will then know whether or not Rasikh will be present.

The Court agrees with Defendant that it should defer any decision regarding this evidence until trial.  Because Rasikh may or may not be at trial, it is premature to rule on the admissibility of the evidence Plaintiffs move to exclude.  Plaintiffs' Motion is denied.

**VII.   PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE OF AN ALLEGED INCIDENT AT A HOTEL IN VANCOUVER, CANADA (dkt. no. 286.)**

Marian Burford was a passenger on Plaintiffs' flight, and claims to have witnessed a passenger, now known to be Reda Ginena, ignoring two flight attendants who asked him to sit down.

Plaintiffs move to exclude only a portion of Burford's testimony.  Burford testified that she saw Reda in an altercation with a buffet hostess earlier in the day on September 29, 2003, before the plane flight at issue.  Burford testified in her deposition that Reda spoke harshly to the hostess and made the hostess cry.  Plaintiffs move to exclude this portion of Burford's testimony under Fed. R. Evid. 403 and 404(b)(1).  Plaintiffs also move to exclude other evidence regarding this alleged altercation, which was included in the Cabin Safety Reports of Defendant's employees Duus and Maykuth.

1    Defendant counters that it is offering Burford's testimony regarding the altercation

2    for the limited and legitimate purpose of explaining why Burford recognized Reda on the

3    flight and why she was particularly attentive towards his conduct on board.

4    **A.    Rule 404(b)**

5    The parties agree that Rule 404(b) precludes Burford from testifying about Reda's

6    behavior during the altercation to show that while on the plane Reda acted in

7    accordance with a character trait for rudeness or hostility.  However, Defendant argues

8    that it is not using the evidence for an impermissible character purpose, but rather to

9    demonstrate that Burford can identify Reda.   The evidence is admissible for this

10   purpose.  However, as described below, this evidence is of very low probative value in

11   light of the other available identifying evidence.

12   **B.    Rule 403**

13   Under Federal Rule of Evidence 403, relevant evidence may be excluded if its

14   probative value is substantially outweighed by the danger of unfair prejudice, confusion

15   of the issues, or misleading the jury.

16   Plaintiffs argue that the evidence is unduly prejudicial, will lead to a mini-trial on

17   Reda's character, and that because Burford saw Reda at the airline gate as well as at

18   the hotel buffet, there exists other evidence for Burford to properly identify Reda.

19   The Court agrees with Plaintiffs that evidence of Reda speaking harshly with a

20   buffet hostess will unfairly prejudice him with the jury.  There is a high degree of

21   probability that the jury will use the information, not only for the admissible purpose of

22   understanding Burford's ability to identify Reda, but also for the inadmissible purpose of

23   drawing inferences about Reda's character for rude or hostile behavior.  Rule 403 is

24   meant to safeguard against such results.  The Court further agrees with Plaintiffs that,

25   because there is conflicting evidence regarding when Burford saw the altercation (the

26   morning of the 29th or in the evening a few nights prior), this heightens the threat of a

27   mini-trial on the issue.

28   ///

6

1   The Court disagrees with Defendant that the evidence of the buffet altercation is
2   highly probative for establishing Burford's ability to identify Reda.  The relevant
3   identification here is whether Burford can identify Reda at trial as the man who had the
4   disagreement with the flight attendants on Flight 694.  It is unimportant whether Burford
5   saw Reda at any point before she saw him on the plane for the purposes of
6   identification.  Thus, while the evidence of the buffet altercation is minimally relevant to
7   the identification at issue, it is cumulative and unnecessary in light of the fact that Burford
8   witnessed the incident on the airplane.  Because of the evidence's probability for unfairly
9   prejudicing the jury, and because other, less prejudicial evidence exists to establish the
10  identification, the buffet altercation evidence is not admissible for identification purposes.

11  The buffet altercation evidence is also relevant to establish Burford's credibility.
12  The jury is more likely to believe Burford's story that she listened in and paid particular
13  attention to the incident on the plane if it is presented with evidence that Burford had
14  seen Reda being similarly gruff with a staff-person on an earlier occasion.  However, this
15  evidence is of minimal probative value, especially in light of other available evidence.
16  Burford testified in her deposition that she heard one flight attendant ask Reda to sit
17  down three times, and another ask him to sit down one time, before he sat down.  It is
18  credible that an eye witness to such an event, even seated several rows behind that
19  person, would pay close attention to the event and remember it.  Moreover, Burford will
20  also testify that she had previously seen Reda at the airline gate, which lends greater
21  credibility to her testimony.

22  Because it is likely that the evidence of the hotel altercation will unfairly prejudice
23  the jury to make impermissible inferences about Reda's character, and is of minimal
24  probative value in light of other available evidence, the Court grants Plaintiffs' Motion in
25  Limine to exclude the evidence.

26  ///
27  ///
28  ///

7

## VIII.   PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF FBI INVESTIGATION PAST OCTOBER 1, 2003 (DKT. NO. 288)

### A.   Background

Plaintiffs move to exclude evidence of the FBI investigation of Plaintiffs after October 1, 2003.  Plaintiffs will introduce evidence of the investigation before that date. Plaintiffs plan on introducing evidence that, after interviewing Plaintiffs and witnesses aboard Flight 694, the Joint Terrorist Task Force ("JTTF") determined that no terrorism nexus existed.  The report also states that "Las Vegas considers this lead covered." However, though it found no terrorism nexus, the FBI investigation of Plaintiffs' behavior aboard the flight continued for several months after October 1, 2003.   This is the evidence Plaintiffs seek to exclude.

In its proposed Pretrial Order (dkt. no. 285), Defendant informed the Court that it will introduce evidence of the FBI's three and a half month investigation into potential charges for interference with flight crew.  Defendant plans on introducing evidence that the FBI issued a prospective report as to Plaintiffs Reda and Amre Ginena, but the U.S. Attorney's office declined prosecution.  (*Id.*)

Specifically, Plaintiffs request that the Court (1) exclude any evidence that the FBI continued its investigation of Plaintiffs after October 1, 2003; and (2) evidence regarding the timing or reasons for the U.S. Attorney's decision to decline prosecution, including Defendant's Exhibits 21, 22, and the FBI memoranda of November 11, 2003, and March 10, 2004.  The evidence Plaintiffs seek to exclude includes, but is not limited to:

- A November 20, 2003 memorandum from Special Agent Duffer states that the United States Attorney's Office in Reno is "[s]till considering whether prosecution should be brought in this instant matter. . . .  Currently there is still confusion as to whether a federal violation has actually been committed or not."

- A January 28, 2004 memorandum from Special Agent Duffer, stating in part: "the number of subjects in this case have been reduced to two from the original nine listed," and "the investigation is complete and a Prosecutive Report is being prepared to present to the United States Attorney's Office" and that "the subsequent decision by the United States Attorney's Office will also be made known to the Bureau."

8

- A partially-redacted January 29, 2004 FBI prospective report regarding the investigation of Reda and Amre Ginena on Alaska Flight 694, sent to the United States Attorney's Office in Reno.

**B.      Relevance and Rule 403**[1]

**1.      Tokyo Convention Defense**

Defendant argues that evidence of the FBI's investigation into whether Plaintiffs criminally interfered with Flight 694's crew is relevant to its Tokyo Convention defense to Plaintiffs' Warsaw Convention cause of action.  Defendant contends that the evidence of the investigation is relevant towards establishing that Captain Swanigan had reasonable grounds to believe that a first class passenger had committed, or was about to commit, an act which may or did jeopardize the safety of the aircraft or the person therein, or which may or did jeopardize the good order or discipline aboard the aircraft.   This defense is articulated in Tokyo Convention Articles 1 and 6.  Defendant also argues that the FBI investigation is relevant towards establishing that Captain Swanigan had reasonable grounds to believe that Plaintiffs had committed an act in contravention of the laws of the United States, and therefore had reasonable grounds to divert the airplane and deliver Plaintiffs to the local authorities.  This defense is articulated in Tokyo Convention Article 9.

Defendant argues that if it were so obvious that Plaintiffs had not committed a crime, the FBI would not have taken months to investigate the incident.  Therefore, evidence of the investigation is relevant to whether Captain Swanigan had "reasonable grounds to believe" that any of the Plaintiffs had committed, or were about to commit, a crime.

The Court agrees with Defendant that the FBI investigation evidence makes it more likely than not that Captain Swanigan's decision to divert the plane was reasonable.  Under Federal Rule of Evidence 402, only relevant evidence is admissible.  Under Federal Rule of Evidence, 401, evidence is relevant if (a) it has any tendency to

---

[1]Because the Court reaches its determination on Plaintiffs' Rules 401 and 403 arguments, it does not address Plaintiffs' law of the case argument.

1   make a fact more or less probable than it would be without the evidence; and (b) the fact

2   is of consequence in determining the action.  The evidence relating to the FBI

3   investigation makes Defendant's Tokyo Convention defense – that Captain Swanigan

4   had a reasonable belief Plaintiffs were interfering with the safety of the aircraft and/or

5   passengers – more probable.  Due to the FBI's inability to come to a conclusion for some

6   months, and its ultimate recommendation to prosecute two Plaintiffs, a reasonable juror

7   could draw the inference that Plaintiffs' on-board behavior was criminal.  The fact that an

8   investigative body such as the FBI seriously considered whether Plaintiffs' behavior was

9   criminal therefore makes it more likely than not that the Captain's belief Plaintiffs violated

10   49 U.S.C. § 46504, *infra* note 2, was a reasonable belief.  *See* Fed. R. Evid. 401.

11         However, the evidence is of minimal probative value.  The evidence demonstrates

12   that FBI was unsure whether Plaintiffs violated 49 U.S.C. § 46504,[2] and the U.S.

13   Attorney's Office chose not to prosecute.  None of the proffered evidence states that the

14   Captain was reasonable in his decision to divert Flight 694.  More importantly, the FBI

15   investigation likely involved the FBI's assessment of much information not available to

16   Captain Swanigan at the time he made his decision – for example, interviews with

17   Plaintiffs, witnesses, and Defendant's employees.

18         This nominal probative value is far outweighed by the 403 dangers.  The

19   evidence's potential to confuse the issues for the jury outweighs any probative value.

20   Plaintiffs are not on trial for committing any crime, but evidence of the FBI's uncertainty

21   about their guilt could lead a jury to consider Plaintiffs' guilt, and spend an inordinate

22   amount of time considering whether or not Plaintiffs violated 49 U.S.C. § 46504.  This

24   ───────────

25         [2]The statute reads: "An individual on an aircraft in the special aircraft jurisdiction
of the United States who, by assaulting or intimidating a flight crew member or flight
attendant of the aircraft, interferes with the performance of the duties of the member or
26   attendant or lessens the ability of the member or attendant to perform those duties, or
attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not
27   more than 20 years, or both. However, if a dangerous weapon is used in assaulting or
intimidating the member or attendant, the individual shall be imprisoned for any term of
28   years or for life."

evidence would also unfairly prejudice the jury, because Plaintiffs were *not* prosecuted, but evidence that the FBI considered prosecuting them could very likely lead a jury to think Plaintiffs *did* commit a crime.  Because it invokes the prestige and authority of the FBI and the United States Department of Justice, evidence of the FBI investigation is obviously prejudicial as it gives merit to Defendant's assertion that Plaintiffs unlawfully interfered with Flight 694.

### 2.   Whether Remarks Were Negligently Made

Defendant argues that the FBI investigation evidence is relevant to whether any Alaska Airlines employee was negligent in making the allegedly defamatory statements. Plaintiffs assert that the statements falsely purport that they criminally interfered with the flight crew.   Defendant plans on introducing evidence of a November 20, 2003, memorandum stating that the FBI and the U.S. Attorney's office could not determine whether there had been a violation of the relevant statute, 49 U.S.C. § 46504, to defend against Plaintiffs' negligence claim.   To the same end, Defendant also plans on introducing evidence that on January 29, 2004, the FBI issued a Prospective Report to the U.S. Attorney, recommending that it consider prosecution of two plaintiffs.

However, the Court agrees with Plaintiffs that because actual malice is at issue, negligence is not.  (Dtk. no. 298-1 at n.1.)  The mental state of negligence is subsumed within the question of recklessness, *see infra* Part VIII(A)(2)(b).   Moreover, in its Opposition, Defendant fails to explain why the FBI's investigation and recommendations, made several months after Defendant's allegedly defamatory statements, negates any negligence on the part of Alaska Airline employees.

### 3.   Actual Malice

Defendant further argues that evidence of the FBI investigation is relevant to whether the author of the allegedly defamatory communications acted with "actual malice" – whether they knew the statements were false, or wrote them with a reckless

///

///

1   disregard for the truth.[3]   Alaska Airlines argues that it should be able to introduce

2   evidence of the FBI's uncertainty regarding whether a crime was committed or not to

3   support its argument that its employees could not have known in the several days after

4   the incident that no crime had been committed by Plaintiffs.  Plaintiffs argue that the FBI

5   investigation cannot be relevant on this point because malice is determined at the date

6   of publication.

7         Despite Defendant's arguments to the contrary, the Court agrees with Plaintiffs.

8   The general rule is that actual malice "rests on the defendant's state of mind at the time

9   of publication."  *Sharon v. Time, Inc.*, 599 F. Supp. 538, 564 (S.D.N.Y. 1984) (citing *Bose*

10   *Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512 (1984)).  Though

11   Defendant argues there is no *per-se* rule that post-publication events cannot bear upon

12   what was known at the time of publication, Defendant provides no compelling reason for

13   parting with the general rule here.  Had the FBI informed Alaska Airlines' employees that

14   Plaintiffs had, or might have, committed a crime *before* the employees made the

15   statements, this would certainly be compelling.  It would bolster Defendant's evidence

16   that the employees did not know that their allegedly defamatory statements were false.

17   But the FBI evidence here does not help establish that point.   It does not go to

18   Defendant's employee's understanding of the truth of their statements.

19

20                  **4.    Relevance to the Truth of Statements in the Chief Pilot's**
                           **Newsletter**

21         Defendant argues that the FBI investigation evidence is relevant to establish the

22   truth of the allegedly defamatory statement: "Now that the FBI has reviewed the case,

23   they believe these passengers also violated federal law and they will investigate the

24   case."  Plaintiffs inform the Court that they do not claim that this statement is defamatory.

25   (Dkt. no. 298-1 at 10.)  Rather, the defamation claim is based on the following language:

26

27         [3]Defendant contends that each of Plaintiffs' defamation claims is subject to a
   qualified privilege.  To overcome these privileges, Plaintiffs must prove that Defendant
28   acted with "actual malice" as to each of them.

"I know many of us feel let down because these people were not arrested and also puzzled and dismayed by the ability these same passengers had as they proceeded to another airline, bought tickets and flew to their original destination."    The FBI investigation and subsequent decision not to charge any Plaintiffs with a crime is not relevant to proving that there were grounds to arrest Plaintiffs.    Although the FBI recommended prosecution of two Plaintiffs, this does not establish that Defendant's statement that the Plaintiffs should have been arrested on September 29, 2003, several months before the FBI made its recommendation, was a true statement.

### 5.    Relevant to Rebut Certain Factual Allegations

Defendant asserts that evidence of the FBI investigation is relevant to rebut Plaintiffs' assertion that the investigation concluded on October 1, 2003, and that the FBI agents who dealt directly with Plaintiffs were sweet, sympathetic, and apologetic towards Plaintiffs.   Defendant correctly argues that such evidence would be misleading, unfairly make it appear to the jury as if the FBI was "on the Plaintiffs' side," and may violate the principle of completeness.    Therefore, the Court determines that Plaintiffs may only introduce evidence of the pre-October 1, 2003, investigation for the purposes of establishing the facts to support their causes of action.   Plaintiffs may only introduce evidence that the JTTF portion of the investigation was finished, and may not present evidence establishing or inferring that the FBI investigation was completed on that date. Plaintiffs also may not introduce evidence of the FBI's sweet, sympathetic, and/or apologetic treatment.    Should Plaintiffs offer any of this evidence, the Court will reconsider its decision on this Motion in Limine, and may allow Defendant to introduce evidence of the FBI investigation after October 1, 2003.

### 6.    Relevant towards Impeachment

Finally, Defendant opposes the Motion on impeachment grounds.   *See* Fed. R. Evid. 613.   Defendant states that the FBI file contains witness statements prepared from FBI interviews that may provide evidence inconsistent with witness testimony at trial. Defendant fails to specify which witnesses, or how their statements are inconsistent with

their deposition or other testimony.  The Court declines to make a sweeping preliminary ruling on whether *all* post-October 1, 2003, evidence may be admissible for impeachment purposes.  It will address the evidence in a piecemeal fashion as the issue arises, should it arise, during trial.

**IX.   CONCLUSION**

IT IS THEREFORE ORDERED that Defendant's Motion in Limine to Exclude Evidence and Testimony Related to Medical Causation (dkt. no. 283) is GRANTED to the extent herein described.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine to Exclude Evidence or Comment on Plaintiff Rasikh's Post-Egyptian Revolution Legal Defenses (dkt. no. 284) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine to Exclude Evidence of an Alleged Incident at a Hotel in Vancouver, Canada (dkt. no. 286) is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion in Limine to Exclude Evidence of FBI Investigation Past October 1, 2003 (dkt. no. 288), is GRANTED to the extent herein described.

IT IS FURTHER ORDERED that Plaintiffs' Request to File a Reply Brief to Defendant's Opposition to Plaintiffs' Motion to Exclude Certain FBI Evidence (dkt. no. 298) is GRANTED.

DATED THIS 17th day of January 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE