UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REDA GINENA, et al., <br><br>　　　　　Plaintiffs, <br>　v. <br>ALASKA AIRLINES, INC., <br><br>　　　　　Defendant. | Case No. 2:04-cv-01304-MMD-CWH <br><br>ORDER <br><br>(Motion in Limine – dkt. no. 287) <br><br>(Request to File a Reply Brief to Defendant's Opposition to Motion to Exclude Expert Testimony – dkt. no. 297) |

## I.　SUMMARY

Before the Court are Plaintiffs' Motion in Limine for Order Excluding Testimony of Defendant's Expert Erik Rigler (dkt. no. 287), and Plaintiffs' Motion for Leave to File a Reply to Defendant's Opposition to the Motion in Limine (dkt. no. 297). The Court heard oral argument on the matter on January 29, 2013.

## II.　BACKGROUND

Plaintiffs are nine passengers who traveled on an Alaska Airlines flight from Vancouver, BC to Las Vegas, NV on September 29, 2003. Plaintiffs allege that three employees of Defendant Alaska Airlines, a captain and two flight attendants, accused all nine Plaintiffs of criminal interference with an air crew. Defendant's employees diverted the aircraft to Reno, NV, and ejected Plaintiffs from the flight.

Plaintiffs filed their original complaint nearly eight years ago, on September 17, 2004. On remand from the Ninth Circuit, Plaintiffs filed a Second Amended Complaint ("SAC") on March 19, 2012. (Dkt. no. 226.) The SAC contains one cause of action for

violation of the Warsaw Convention, Article 19, and eight defamation causes of action. (*Id.*)

Plaintiffs move to exclude Defendant's expert Erik Rigler. Defendant plans on calling Mr. Rigler to rebut the testimonies of Plaintiffs' pilot and flight attendant experts. Defendant informs the Court that it intends to question Mr. Rigler about the reasonableness of Defendant's reactions to Plaintiffs' conduct in light of the applicable industry standards and regulations.

### III. LEGAL STANDARD

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." Black's Law Dictionary 1109 (9th ed. 2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C & E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *See, e.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This

is because, although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## IV.   ANALYSIS

### A.   Requirements of Federal Rule of Evidence 702

Fed. R. Evid. 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

"The Supreme Court interpreted Rule 702 and articulated general guidelines for its application in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)." *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1004 *opinion amended on denial of reh'g sub nom. Jinro Am., Inc. v. Secure Investments, Inc.*, 272 F.3d 1289 (9th Cir. 2001). "*Daubert,* the seminal opinion, focused on scientific testimony; *Kumho* made clear that *Daubert*'s

///

principles apply to 'technical and other specialized knowledge' as well." *Id.* (citing *Kumho*, 526 U.S. at 141, 147-49).

"Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *Jinro*, 266 F.3d at 1004 (citations omitted). "An expert witness ─ unlike other witnesses ─ is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion [has] a reliable basis in the knowledge and experience of his discipline." *Id.* (citations and quotation marks omitted).

### 1. Rigler's Qualifications

Plaintiffs argue that Rigler is not qualified to testify as an expert about (1) airline industry standards applicable to the conduct of captains and crews on commercial international passenger flights, or (2) Defendant's employees' compliance with airline industry standards.

Plaintiffs claim that Rigler is unqualified to provide expert testimony in this case because he has not worked as a commercial airline pilot on international flights, and because he has never served as a regular crew member on a commercial passenger airline. Rigler is FAA-rated to pilot corporate jets, not passenger airlines.

The Court disagrees with Plaintiffs, and determines that Rigler is qualified to testify as an expert in this case. Rigler is an aircraft pilot and flight instructor who was an FBI agent for 23 years. Much of his work with the FBI dealt with aircraft and airport security issues. He was trained by the FBI and five major airlines in a program known as "Operation Switch," which dealt specifically with certain crimes aboard aircraft. (Dkt. no. 294-3 at 4.) Rigler has investigated a number of aircraft incidents involving allegations of passenger misconduct and has provided testimony as an expert in those matters. (*Id.*) Due to Rigler's specialized knowledge of aircraft regulations and industry standards, as well as his extensive history investigating airplane disturbance cases, Rigler's testimony will help the jury to better understand the evidence presented. His expertise reviewing airplane and aircraft disturbances demonstrates that Rigler has specific knowledge about

aircraft safety, and possesses more than "knowledge as to a general field." *Cf. City of Hobbes v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998).[1]

The Court holds that Rigler's background and experience satisfy the threshold qualification requirements of Rule 702(a). Plaintiffs' arguments regarding the strength of Rigler's credentials relate to Rigler's credibility, and Plaintiffs may, of course, attack his credibility on cross-examination. *See Kennedy v. Collegen Corp.*, 161 F.3d 1226, 1230-31 (9th Cir.1998).

### 2.   Reliability of Expert's Testimony

Experts must not only be qualified to testify on a specific matter, but their testimony must be reliable. "[W]hile an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability. [O]ur caselaw plainly establishes that one may be considered an expert but still offer unreliable testimony." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (citation, quotation marks, and ellipses omitted; brackets in original). The advisory committee notes to Fed. R. Evid. 702 further explain that:

> The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted.  The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.

---

[1] *United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000), cited by Plaintiffs, is inapposite. There, proffered expert Professor Lausier did not testify as to his training or experience detecting counterfeit securities, which was at issue in *Chang*. The expert merely testified that he had practical expertise in international finance, which the district court determined did not amount to practical expertise determining whether a particular security was a counterfeit. *Id.* Here, Rigler received extensive training making him qualified to testify about aircraft industry standards and regulations ‒ he received training from the National Transportation Safety Board, the FAA, the United States Navy and Air Force, the FBI, as well as legal and aeronautic academic institutions. (Dkt. no. 294-3 at 4.) Rigler spent 23 years as an FBI agent, during which time much of his work dealt with aircraft and airport security issues. Further, he was trained by the FBI and five major airlines in a training program dealing specifically with certain crimes aboard aircraft. (*Id.*) For these reasons, Rigler's qualifications and experience relating to the particular matters in this case are far superior to Professor Lausier's in *Chang*.

1   Fed. R. Evid. 702 "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Jinro*, 266 F.3d at 1005. "And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." *Id.*

Plaintiffs assert that the methodology underlying Rigler's Analysis and Conclusions ("A&C") number 6 makes no sense. Plaintiffs present many counter-arguments to points raised by A&C 6. For example, Plaintiffs argue Rigler's conclusion that diverting the aircraft was more important than conducting further investigation by speaking with the passengers is a nonsensical conclusion, because the aircraft was in cruise mode. This counter-argument, like Plaintiffs' other counter-arguments raised in their Motion, raise questions about the credibility of Rigler's testimony. They do not attack the methodology Rigler used in reaching his conclusions. From reviewing the report, it is clear that Rigler considered eye witness testimony regarding the flight (dkt. no. 294-3 at 17), regulations and policies relating to passenger and airplane personnel behavior aboard an aircraft (*id.* at 9-14), and based his A&C's on that data, as well as his experience and expertise. Plaintiffs do not explain how this methodology is substandard. In fact, Rigler's methodology appears to be akin to the methodology used by Plaintiffs' own expert, Captain Mark S. Swint, who reviewed and considered evidence from this case, and used that evidence along with his expertise and experience to reach his conclusions. (*See* dkt. no. 287-4.)

Plaintiffs also argue that Rigler's A&C's are conclusory, but Plaintiffs fail to point out that Rigler's report also details his review of the relevant documents in this case, which provided a great deal of information about what occurred on the airplane. In light of these portions of his report, the Court cannot determine that Rigler's A&C's are bare conclusions unsupported by data and reasoning. Rigler also explained the foundation for and reasoning behind his opinions during his deposition.

///

Plaintiffs' other arguments on this point are similarly unavailing. Rigler's "factual basis, data, principles, methods, or their application" have not been called seriously into question. See *Jinro*, 266 F.3d at 1005.

### B.  Scope of Expert's Testimony

For the foregoing reasons, Mr. Rigler is qualified to testify and his testimony is sufficiently reliable for the purposes of Fed. R. Evid. 702. However, as the Court noted at its January 29, 2013, hearing, some portions of Rigler's testimony are inadmissible for other reasons. Below, the Court outlines the parameters which will guide the Court in determining the admissibility of Rigler's testimony at trial.

#### 1.  The Expert May Testify Regarding Industry Standards

Rigler may testify about his knowledge and understanding of airline industry standards. At oral argument, Plaintiffs argued that industry standards are not relevant in this case, and that discussing industry standards will merely confuse the jury. The Court disagrees. Informing the jury about industry standards is relevant because such evidence may negate actual malice. That is, should Defendant successfully raise a qualified privilege defense to Plaintiffs' defamation causes of action, Plaintiffs will have to prove that Defendant acted with actual malice in defaming Plaintiffs to prevail. Industry standards evidence is relevant to negate the charge of actual malice, because it provides Defendant with evidence that its employees were merely declaring their understanding of industry standards when they made the allegedly defamatory statements about Plaintiffs' on-board behavior, and were not making statements they knew were false. Informing the jury about industry standards also is relevant to Defendant demonstrating that its employees did not act with willful misconduct. Should the jury determine that Defendant did not engage in willful misconduct, the Warsaw

///
///
///
///

1  Convention's damages cap of 16,000 Special Drawing Rights ("SDR") per passenger will
2  apply.[2] (*See* dkt. no. 289, at 22 ¶ 3.)

3  Plaintiffs argue that even if airline industry standards are relevant, Defendant's
4  other witnesses, expert pilot Ashby and Flight 694 pilot Captain Swanigan, can also
5  testify to industry standards. However, Defendant explained that Mr. Rigler is being
6  presented as a rebuttal witness, rebutting testimony of Plaintiffs' pilot and flight attendant
7  experts. Swanigan and Ashby will testify primarily about the reasonableness of
8  Defendant's employees' decisions in the cockpit rather than in the cabin. (*See, e.g.,* dkt.
9  no. 316 at 3-5.) Rigler's testimony does address the reasonableness of Swanigan's
10 actions, but also the actions of other Alaska Airlines employees. (*See, e.g.,* dkt. no. 294-
11 3 at 16, ¶ 7.)

12 For these reasons, the Court determines that Rigler may testify regarding airline
13 industry standards, and that such testimony is relevant and not duplicative based on the
14 information presented to the Court in connection with this Motion. Testimony at trial may
15 cause the Court to revisit the issue of whether his testimony is duplicative.

### 2.  The Expert May Not Testify Regarding Industry Regulations

"Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) (internal quotation marks omitted); *see also United States v. Brodie*, 858 F.2d 492, 496-97 (9th Cir. 1988), *overruled on other grounds by United States v. Morales*, 103 F.3d 1031, 1033 (9th Cir. 1997) (en banc). A trial court properly excludes testimony which instructs the jury on legal issues or effectively attempts to instruct the jury how to decide." *Shops at Grand Canyon 14, LLC v. Rack Room Shoes, Inc.*, 2:09-CV-01234, 2010 WL 4181361, at *3 (D. Nev. Oct. 20, 2010) (citing *Nationwide v. Kass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008). "Evidence that merely tells the jury what results to reach is not

---

[2] SDRs are not currency, but represent a claim to currency held by IMF member countries for which they may be exchanged. *Factsheet: Special Drawing Rights (SDRs)*, International Monetary Fund, March 31, 2011.

8

sufficiently helpful to the trier of fact to make it admissible under Rule 702." *Id.* (citing *Nationwide*, 523 F.3d at 1060). "Moreover, it is clear that offering legal conclusion testimony invades the province of the trial judge." *Id.* (citing *Nationwide*, 523 F.3d at 1059). "An expert cannot give[] an opinion as to her legal conclusion, i.e. an opinion on an ultimate issue of law." *Id.* (citing *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053 (9th Cir. 2002)).

However, there may be "instances in rare, highly complex and technical matters where a trial judge, utilizing limited and controlled mechanisms, and as a matter of trial management, permits some testimony seemingly at variance with the general rule." *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008) *rev'd sub nom. Horne v. Flores*, 557 U.S. 433 (2009) (citing *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 101 (1st Cir. 1997)). In fact, "[a]fter analyzing the case law, the leading treatise on federal practice concludes that 'the courts seem more open to the admission of expert legal opinions where the subject is the application of some complex regulatory or legal standard to a specific factual background.'" *Adams v. United States*, 2009 U.S. Dist. LEXIS 34169, at *16 (D. Idaho Apr. 20, 2009) (citing 29 Wright and Gold, Federal Practice & Procedure, § 6264 at p. 220 n. 36 (1997)).

Defendant argues that the Court should exercise its discretion and admit Rigler's testimony about the airline industry regulations under *Flores* because of the complexity of the regulatory framework at issue. However, it is not clear to the Court that airline industry regulations at issue here are complicated or highly technical. Defendant does not cite to any law demonstrating that the airline industry's regulations are particularly complex. Rather, the regulations cited by Rigler in his report are relatively simple. They discuss (1) that persons may not assault crewmembers or interfere with crewmembers' duties; (2) that the airline pilot has final responsibility in the operation of an aircraft; (3) that the pilot may deviate from other airline rules during an in-flight emergency; and (4) post-September 11, 2001, aircraft security measures, including prohibiting passengers from loitering at the forward lavatory and gallery, positively identifying those entering the

flight deck, strictly enforcing seatbelt signs, among other measures. (*See* dkt. no. 294-3 at 9-10.) These industry regulations appear to be far less complex than the environmental framework at issue in *Adams* or the education law and policy in *Flores*, and the facts to which the framework must be applied here are likewise less complicated. For example, the *Adams* court allowed expert testimony about the role of the EPA and the Federal Insecticide, Fungicide, and Rodenticide Act in establishing industry standards and regulations for pesticide registration. 2009 U.S. Dist. LEXIS 34169, at *16. Rigler, on the other hand, would testify about relatively straightforward regulations, which most airline passengers are aware of due to their experience with air travel or their exposure from the news media. Even those potential jurors not familiar with airline regulations will be able to easily grasp simple concepts such as "the pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft." (Dkt. no. 294-3, citing 14 C.F.R. § 91.3.)

To the extent that the regulations cited by Rigler help clarify what the flight attendants and Captain believed their duties were when faced with a disturbance aboard the aircraft, the flight attendants and Captain Swanigan are superior witnesses to provide testimony regarding their understanding of such duties. But these witnesses may not testify as to legal conclusions based on the cited regulations. Nor may Rigler. After reviewing Rigler's A&C's, it appears as if Rigler uses the cited regulations, in large part, to reach legal conclusions. (*See, e.g.,* dkt. no. 294-3 at 15, A&C 2: "to the extent that these passengers were intimidating the flight crew, these actions could rise to a level of a violation of Title 49 U.S. Code Section 46504 . . . .".)

### 3. Areas where the Expert is Excluded from Testifying

For the foregoing reasons, the Court holds that Erik Rigler may present expert testimony in this case. Mr. Rigler may testify about airline industry standards. Mr. Rigler may not testify about matters of law, and is precluded from testifying about federal airline regulations and their applicability to this case. Mr. Rigler is also precluded from testifying

///

about legal conclusions based on these regulations.  To that end, Mr. Rigler is precluded from testifying on the following:

- A&C 1, ¶ 1: this is a legal conclusion, and is not admissible.
- A&C 1, ¶¶ 3-4: These paragraphs state a regulation (¶ 3) and also draw an impermissible legal conclusion (¶ 4).
- A&C 2, ¶ 1-2: these paragraphs provide impermissible legal conclusions regarding causation.
- A&C 6, ¶ 2-3: these paragraphs contain impermissible legal conclusions regarding Captain Swanigan's compliance with 14 C.F.R. § 91.3.
- A&C 7: this A&C contains a legal conclusion regarding the International Contract of Carriage.

These A&C's are found at Dkt. no. 294-3, pages 15-16.

Rigler also may not testify regarding any analysis or conclusions based on the FBI's investigation of Flight 694 occurring after October 1, 2003, in accordance with the Court's previous Order.  (Dkt. no. 305.)

The Court notes that the parties made several arguments and cited to several cases not discussed above, including a limited discussion of the applicability of the law of the case doctrine to portions of Rigler's testimony.  The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion in Limine.

Finally, the Court did not review Plaintiffs' Reply Brief attached to their Request to File a Reply Brief to Defendant's Opposition to Motion to Exclude Expert Testimony.  (Dkt. no. 297.)

///

///

///

///

///

///

## V. CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion in Limine for Order Excluding Testimony of Defendant's Expert Erik Rigler (dkt. no. 287) is GRANTED IN PART and DENIED IN PART, as discussed herein.

IT IS FURTHER ORDERED THAT Plaintiffs' Motion for Leave to File a Reply to Defendant's Opposition to the Motion in Limine (dkt. no. 297) is DENIED.

DATED THIS 1st day of February 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE