1  WILLIAM V. O'CONNOR, JR. (*admitted pro hac vice*)
   ELLEN NUDELMAN ADLER (*admitted pro hac vice*)
2  MORRISON & FOERSTER LLP
   12531 High Bluff Drive
3  San Diego, California  92130-2040
   Telephone: (858) 720-5100
4  Facsimile: (858) 720-5125
   DRushing@mofo.com
5  WOConnor@mofo.com
   EAdler@mofo.com
6
   CARRIE MCCREA HANLON
7  MILLS & ASSOCIATES
   3650 North Rancho Drive, Suite 114
8  Las Vegas, NV 89130
   Telephone: (702) 240-6060
9  Facsimile: (702) 240-4267
   CHanlon@mcmillslaw.com
10
   Attorneys for Defendant
11 ALASKA AIRLINES, INC.

12                    UNITED STATES DISTRICT COURT

13                         DISTRICT OF NEVADA

14 REDA A. GINENA, NAHID I. GINENA, AMRE       Case No. CV-S-04-1304-MMD-CWH
   R. GINENA, SABRINA KOBERT, M. MAGDY
15 H. RASIKH, M. SAMIR MANSOUR, AZZA          **DEFENDANT ALASKA AIRLINES,**
   EID, NAZMI M. NAZMI, and HEBA NAZMI,       **INC.'S SUPPORT FOR DISPUTED**
16                                             **PROPOSED JURY**
              Plaintiffs,                      **INSTRUCTIONS**
17
         v.
18
   ALASKA AIRLINES, INC.,
19
              Defendant.                       Judge:  Honorable Miranda M. Du
20

21

22        Alaska Airlines, Inc., respectfully submits the following support for its proposed jury

23 instructions which are disputed by plaintiffs.   The parties have met and conferred regarding the

24 disputed instructions.

25

26

27

28

# Table of Contents

**Page**

29.   SPECIAL JURY INSTRUCTION NO. 1:  INTERFERENCE WITH FLIGHT CREW MEMBERS AND ATTENDANTS ...................................................1

30.   SPECIAL JURY INSTRUCTION NO. 2:  PROHIBITION ON INTERFERENCE WITH CREWMEMBERS.............................................................................2

31.   SPECIAL JURY INSTRUCTION NO. 3:  WARSAW CONVENTION DELAY CLAIM ........................................................................................................3

32.   SPECIAL JURY INSTRUCTION NO. 4:  PLAINTIFFS' CONTRIBUTORY NEGLIGENCE ............................................................................................4

33.   SPECIAL JURY INSTRUCTION NO. 5:  TOKYO CONVENTION DEFENSE.............5

34.   SPECIAL JURY INSTRUCTION NO. 6:  AUTHORITY OF PILOT IN COMMAND ....7

35.   SPECIAL JURY INSTRUCTION NO. 7:  RESPONSIBILITY OF PILOT IN COMMAND ...............................................................................................8

37.   SPECIAL JURY INSTRUCTION NO. 9:  RIGHT TO REFUSE "TRANSPORTATION...........................................................................10

38.   SPECIAL JURY INSTRUCTION NO. 10:  DELAY DAMAGES ...............................12

39.   SPECIAL JURY INSTRUCTION NO. 11:  PREEMPTED DAMAGES ........................14

40.   SPECIAL JURY INSTRUCTION NO. 12:  DELAY DAMAGES CAP .........................15

41.   SPECIAL JURY INSTRUCTION NO. 13:  WILLFUL MISCONDUCT........................16

42.   DEFAMATORY COMMUNICATION:  DEFINITION .................................17

44.   SPECIAL JURY INSTRUCTION NO. 15:  DEFAMATION DEFENSES .....................18

45.   SPECIAL JURY INSTRUCTION NO. 16:  CLAIMS SUBJECT TO LAW ENFORCEMENT REPORTING PRIVILEGE.................................................19

46.   SPECIAL JURY INSTRUCTION NO. 17:  CLAIMS SUBJECT TO INTRACORPORATE COMMUNICATIONS PRIVILEGE.............................................20

47.   SPECIAL JURY INSTRUCTION NO. 18: CLAIMS SUBJECT TO COMMON INTEREST PRIVILEGE...................................................................22

48.   SPECIAL JURY INSTRUCTION NO. 19: COMMON INTEREST PRIVILEGE..........24

49.   SPECIAL JURY INSTRUCTION NO. 20:  INTRA-CORPORATE COMMUNICATIONS PRIVILEGE....................................................25

50.   SPECIAL JURY INSTRUCTION NO. 21:  LAW ENFORCEMENT REPORTING PRIVILEGE.......................................................................26

51.   SPECIAL JURY INSTRUCTION NO. 22: MALICE IN FACT DEFINITION ...............27

52.   DAMAGES: LOST PROFITS ...................................................................28

53.   DAMAGES: UNCERTAINTY AS TO AMOUNT .........................................30

**29.    SPECIAL JURY INSTRUCTION NO. 1:  INTERFERENCE WITH FLIGHT CREW MEMBERS AND ATTENDANTS**

An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both. However, if a dangerous weapon is used in assaulting or intimidating the member or attendant, the individual shall be imprisoned for any term of years or for life.

**Authority:  49 U.S.C. § 46504**

**Analysis**:  The language in Alaska Airlines' Proposed Special Jury Instruction No. 1 is taken directly from 49 U.S.C. § 46504, which governs criminal interference with a flight crew. Plaintiffs have indicated that they object to this instruction because it is incomplete and misleading.  The instruction is not incomplete, as it provides the entire text of § 46504. Moreover, it is not misleading or irrelevant.  Plaintiffs allege that Alaska Airlines made statements imputing criminal interference with a flight crew to plaintiffs, and that those statements constitute defamation *per se*.  Accordingly, the jury should be instructed on the requirements of criminal interference with a flight crew to determine whether the statements made by employees of Alaska Airlines were true and not defamatory.  Proposed Special Instruction No. 1 should be given as requested.

Given as Requested:  _____

Given as Modified:  _____

Refused:  _____

Withdrawn:  _____

_____
JUDGE OF THE DISTRICT COURT

**30.     SPECIAL JURY INSTRUCTION NO. 2:  PROHIBITION ON INTERFERENCE WITH CREWMEMBERS**

No person may assault, threaten, intimidate, or interfere with a crewmember in the performance of the crewmember's duties aboard an aircraft being operated.

**Authority:  14 C.F.R. § 91.11**

**Analysis:**  The language in Alaska Airlines' Proposed Special Jury Instruction No. 2 is taken directly from 14 C.F.R. § 91.11, which governs civil interference with a flight crew.  Plaintiffs have indicated that they object to this instruction because it is incomplete and misleading.  The instruction is not incomplete, as it provides the entire text of § 91.11.  Moreover, it is not misleading or irrelevant.  Plaintiffs allege that Alaska Airlines made defamatory statements and allegations concerning plaintiffs' interference with a flight crew.  Accordingly, the jury should be instructed on the requirements of civil interference with a flight crew to determine whether the statements made by employees of Alaska Airlines were truthful and not defamatory.  Proposed Special Instruction No. 2 should be given as requested.

Given as Requested:  _____

Given as Modified:  _____

Refused:  _____

Withdrawn:  _____

_____
JUDGE OF THE DISTRICT COURT

**31.    SPECIAL JURY INSTRUCTION NO. 3:  WARSAW CONVENTION DELAY CLAIM**

Alaska Airlines is liable for Plaintiffs' damage, if any, occasioned by delay in their transportation by air.  However, Alaska Airlines is not liable if it proves that Alaska Airlines and its agents took all necessary measures to avoid the damage or that it was impossible for Alaska Airlines to take such measures.

**Authority:** Convention for the Unification of Certain Rules Relating to International Carriage by Air, Signed at Warsaw on 12 October 1929 ("Warsaw Convention"), art. 19, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11, *reprinted in* 49 U.S.C. § 40105, as amended at The Hague in 1955; Warsaw Convention, art. 20, as amended by Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules relating to International Carriage by Air (1975).

**Analysis:**  The language in Alaska Airlines' Proposed Special Jury Instruction No. 2 is taken directly from the Warsaw Convention as amended by The Hague in 1955 and by Montreal Protocol No. 4.  Plaintiffs have indicated that they object to this instruction on grounds that it is incomplete.  This instruction is not incomplete.  Article 19 provides, in full that "[t]he carrier is liable for damage occasioned by delay in the carriage by air of passengers, luggage or goods."  Neither the delay in transportation of goods or luggage is at issue here.  Article 20 provides, in full, that "[t]he carrier is not liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures."  Accordingly, this instruction is plainly relevant and necessary for the determination of plaintiffs' claims for delay under the Warsaw Convention.

Given as Requested:    _____

Given as Modified:    _____

Refused:    _____

Withdrawn:    _____

_____
JUDGE OF THE DISTRICT COURT

DEFENDANT ALASKA AIRLINES, INC.'S SUPPORT FOR DISPUTED JURY INSTRUCTIONS

**32.    SPECIAL JURY INSTRUCTION NO. 4:  PLAINTIFFS' CONTRIBUTORY NEGLIGENCE**

If Alaska Airlines proves that the damage from the delay was caused by or contributed to by the negligence of the Plaintiffs, you may exonerate Alaska Airlines wholly or partly from its liability.

**Authority:  Warsaw Convention, Art. 21(1), as amended by Montreal Protocol No. 4.**

**Analysis:**  The language in Alaska Airlines' Proposed Special Jury Instruction No. 4 is taken directly from the Warsaw Convention as amended by Montreal Protocol No. 4.  Plaintiffs have indicated that they object to this instruction on grounds that it is incomplete and misleading. Article 21(1) provides, in full, that "[i]f the carrier proves that the damage was caused by or contributed to by the negligence of the injured person the Court may, in accordance with the provisions of its own law, exonerate the carrier wholly or partly from his liability."  Because the proposed instruction encompasses the entirety of Article 21(1), it is not incomplete or misleading. Further, the instruction is necessary to a determination of Alaska Airlines' liability to plaintiffs for plaintiffs' claims for delay under the Warsaw Convention.  Alaska Airlines contends that plaintiffs' actions on board Flight 694 caused and/or contributed to the action taken by Captain Swanigan to disembark plaintiffs.  Proposed Special Instruction No. 4 should be given as requested.

Given as Requested:    _____

Given as Modified:    _____

Refused:    _____

Withdrawn:    _____

_____
JUDGE OF THE DISTRICT COURT

**33.   SPECIAL JURY INSTRUCTION NO. 5:  TOKYO CONVENTION DEFENSE**

As the aircraft commander, Captain Swanigan may, when he has reasonable grounds to believe that a person has committed, or is about to commit, an act which may or does jeopardize the safety of the aircraft or persons or property therein, or which may or does jeopardize good order or discipline on board the aircraft, impose upon such person reasonable measures including restraint which are necessary:

(a) to protect the safety of the aircraft, or of persons or property therein;

(b) to maintain good order and discipline on board; or

(c) to enable him to deliver such persons to competent authorities or to disembark the passenger.

If Captain Swanigan acted with such reasonable grounds during Flight 694 and imposed upon Plaintiffs such reasonable measures, then Alaska Airlines is not liable to Plaintiffs.

**Authority**:  Convention on Offences and Certain Other Acts Committed On Board Aircraft, Signed at Tokyo, on 14 September 1963 (Tokyo Convention), arts. 1, 6, 10.

**Analysis:**  The language in Alaska Airlines' Proposed Special Jury Instruction No. 5 is taken directly from the Tokyo Convention Articles 1, 6 and 10.  Plaintiffs have indicated that they believe this instruction is incomplete and misleading.  The instruction is neither.  Article 6 provides, in full, that "[t]he aircraft commander may, when he has reasonable grounds to believe that a person has committed, or is about to commit, on board the aircraft, an offence or act contemplated in Article 1, paragraph 1, impose upon such person reasonable measures including restraint which are necessary: (a) to protect the safety of the aircraft, or of persons or property therein; or (b) to maintain good order and discipline on board; or (c) to enable him to deliver such person to competent authorities or to disembark him in accordance with the provisions of this Chapter."  Article 10 provides, in full, that "[f]or actions taken in accordance with this Convention, neither the aircraft commander, any other member of the crew, any passenger, the owner or operator of the aircraft, nor the person on whose behalf the flight was performed shall

1   be held responsible in any proceeding on account of the treatment undergone by the person

2   against whom the actions were taken."  Because this instruction quotes and encompasses the

3   relevant portions of the Tokyo Convention, it is not misleading or incomplete.  Moreover, the

4   instruction is plainly relevant to Alaska Airlines' liability concerning plaintiffs' claims for delay

5   under the Warsaw Convention.  Alaska Airlines contends that Captain Swanigan had "reasonable

6   grounds" to divert the flight to Reno and deliver plaintiffs to the authorities under the Tokyo

7   Convention.  Accordingly, proposed Special Jury Instruction No. 5 should be given as requested.

8

9   Given as Requested:   _____

10  Given as Modified:    _____

11  Refused:              _____

12  Withdrawn:            _____

13

14                                         _____
                                           JUDGE OF THE DISTRICT COURT
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**34.    SPECIAL JURY INSTRUCTION NO. 6:  AUTHORITY OF PILOT IN COMMAND**

Under Federal Aviation Regulation 14 C.F.R. § 91.3(a), the pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of the aircraft.

**Authority: 14 C.F.R. § 91.3(a).**

**Analysis:**  The language in Alaska Airlines' Proposed Special Jury Instruction No. 6 is taken directly from 14 C.F.R § 91.3(a).  Plaintiffs have indicated that they believe this instruction is incomplete, misleading, and irrelevant.  The instruction is not incomplete.  Section 91.3(a) provides, in full, that "[t]he pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft."

Moreover, the instruction is not misleading or irrelevant.  The Federal Aviation Regulations ("FARs"), including § 91.3(a), are relevant to industry standards in the airline industry.  Additionally, the FARs are relevant to the training received by Captain Swanigan and the flight crew on board Flight 694 at the time of the incident.  Indeed, the Court recognized that it is likely that Captain Swanigan and other witnesses will testify regarding the FARs.  (Doc. No. 324 ("The flight attendants and Captain Swanigan are superior witnesses to provide testimony regarding their understanding of such duties").  Under § 91.3(a) and industry standards, Captain Swanigan was ultimately responsible for the operation of the aircraft.  Special Instruction No. 6 should be given as requested.

Given as Requested:    _____

Given as Modified:    _____

Refused:            _____

Withdrawn:          _____

_____
JUDGE OF THE DISTRICT COURT

DEFENDANT ALASKA AIRLINES, INC.'S SUPPORT FOR DISPUTED JURY INSTRUCTIONS

1    **35.    SPECIAL JURY INSTRUCTION NO. 7:  RESPONSIBILITY OF PILOT IN**
2    **COMMAND**

3        Under 14 C.F.R. § 121.537, the pilot in command of an aircraft is, during flight time, in

4    command of the aircraft and crew and is responsible for the safety of passengers, crewmembers,

5    cargo, and the aircraft.  The pilot in command has full control and authority in the operation of

6    the aircraft and over other crewmembers and their duties during flight time.

7    **Authority:  14 C.F.R. § 121.537(d).**

8    **Analysis:** The language in Alaska Airlines' Proposed Special Jury Instruction No. 7 is taken

9    directly from 14 C.F.R. § 121.537(d).  Plaintiffs have indicated that they believe this instruction is

10   incomplete, misleading, and irrelevant.  First, the instruction is not incomplete.  Section

11   121.537(d) provides, in full, that "[e]ach pilot in command of an aircraft is, during flight time, in

12   command of the aircraft and crew and is responsible for the safety of the passengers,

13   crewmembers, cargo, and aircraft. The pilot in command has full control and authority in the

14   operation of the aircraft, without limitation, over other crewmembers and their duties during flight

15   time, whether or not he holds valid certificates authorizing him to perform the duties of those

16   crewmembers."  Accordingly, the instruction encompasses the entirety of the relevant FAR.

17       Second, the instruction is not misleading or irrelevant.  The FARs, including § 121.537(d),

18   are relevant to industry standards in the airline industry.  Additionally, the FARs are relevant to

19   the training received by Captain Swanigan and the flight crew on board Flight 694 at the time of

20   the incident.  Thus, under § 121.537(d) and industry standards, Captain Swanigan was ultimately

21   responsible for the safety of passengers, crewmembers, cargo, and the aircraft.  He, as pilot in

22   command, had "full control and authority in the operation of the aircraft" and "over other

23   crewmembers" during Flight 694.

24   ///

25   ///

26   ///

27   ///

28

1    Because it is relevant to industry standard and training in the airline industry, Special

2    Instruction No. 7 should be given as requested.

3    Given as Requested:    _____

4    Given as Modified:    _____

5    Refused:    _____

6    Withdrawn:    _____

7

8    _____
     JUDGE OF THE DISTRICT COURT

1

2

**37.    SPECIAL JURY INSTRUCTION NO. 9:  RIGHT TO REFUSE TRANSPORTATION**

3

4

5

6

7

8

An airline is justified in refusing to transport a passenger if that transportation, in the opinion of the pilot, would be inimical to the safety of the flight.  In judging the legality of a denial of passage, you must look to the opinion of the airline pilot, and that opinion controls, if it is a reasonable opinion based on the facts and circumstances as they appear to the pilot at the time that the decision was made.  It is not what is reasonable in the after-light, but what appears to be reasonable at the time.

9

**Authority:  *Cordero v. CIA Mexicana de Aviacion*, 681 F.2d 669, 671 n.2 (9th Cir. 1982).**

10

11

12

13

14

15

16

**Analysis**: Often a pilot's decision has to be made in an instant. The pilot's decisions is therefore entitled to deference, in light of the circumstances associated with operating an aircraft traveling at 600 knots and 30,000 feet above the ground.  Accordingly, the reasonableness of the pilot's decisions must be judged based on the information the pilot knew at the time of the disturbance; not the information available to him in hindsight. 49 U.S.C. § 44902(b), provides:  "Subject to regulations of the Under Secretary, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety."

17

18

19

20

21

22

23

Although Section 44902 is not identical to the Tokyo Convention (which governs here), it nonetheless speaks generally to an air carrier's decision to refuse passage.  In fact, the language of the Tokyo Convention supports a more cautious approach to decision-making compared to Section 44902 because: (1) the Tokyo Convention does not require a danger to safety on board— danger to "good order and discipline" suffices; and (2) the Convention incorporates two levels of anticipation—that a passenger is about to commit an act that may jeopardize the safety, or good order and discipline on board. See Tokyo Convention, Art. 1, ¶ 1(b); Art. 6; Art. 8.

24

25

26

27

With the foregoing caveats, Section 44902's reasonableness standard should be incorporated in the Tokyo Convention.  The Ninth Circuit adopted the test for reasonableness under § 44902 from *Williams v. Trans World Airlines*, 509 F.2d 942 (2d Cir. 1975). As the Ninth Circuit explained: "The test of whether or not the airline properly exercised its power under [§

28

DEFENDANT ALASKA AIRLINES, INC.'S SUPPORT FOR DISPUTED JURY INSTRUCTIONS

44902(b)] to refuse passage to an applicant or ticket-holder rests upon the facts and circumstances of the case as known to the airline at the time it formed its opinion and made its decision and whether or not the opinion and decision were rational and reasonable in the light of those facts and circumstances. *Cordero v. Cia Mexicana De Aviacion*, 681 F.2d 669, 672 (9th Cir. 1982) (quoting *Williams*, 509 F.2d at 948) (emphasis added).  The airline's actions "are not to be tested by other facts later disclosed by hindsight." *Id.* (quoting *Williams*, 509 F.2d at 948) (emphasis added)).  Courts must "take[] into account the fact that air carriers often must make decisions within moments of take-off and with less than perfect knowledge." *Id.* "The reasonableness of the carrier's opinion, therefore, is to be tested on the information available to the airline at the moment a decision is required.  There is correspondingly no duty to conduct an in-depth investigation into a ticket-holder's potentially dangerous proclivities." *Id.*

Accordingly, proposed Special Jury Instruction No. 9 should be given as requested.

Given as Requested:     _____

Given as Modified:      _____

Refused:                _____

Withdrawn:              _____

_____

JUDGE OF THE DISTRICT COURT

1

**38.     SPECIAL JURY INSTRUCTION NO. 10:  DELAY DAMAGES**

2

        Damages for "delay in transportation" under Article 19 of the Warsaw Convention must

3

be directly tied to the Plaintiffs' late arrival at their destination airport.  Such damages include,

4

but are not necessarily limited to, the cost of making alternative travel arrangements, the cost

5

associated with the amount of time lost due to the delay, and inconvenience caused by the delay.

6

You may not award delay damages for emotional distress or reputational injury, if any, that may

7

have been occasioned by the delay.

8

9

**Authority:** *Smith v. Peidmont Aviation, Inc.*, 567 F.2d 290, 292 (5th Cir.1978) (holding that cost
of making alternative travel arrangements was one type of delay damage contemplated by the
Warsaw Convention); *Lopez v. E. Airlines, Inc.*, 677 F. Supp. 181, 183 (S.D.N.Y. 1988) (holding
that the plaintiffs' loss of time was another type of delay damage contemplated under the Warsaw
Convention); *Daniel v. Virgin Atl. Airways, Ltd.*, 58 F. Supp. 2d 986, 992 (N.D. Cal. 1998)
(holding that damages for "inconvenience" were another type of damages cognizable under the
Warsaw Convention, but that damages for emotional distress were not); *Lee v. Am. Airlines, Inc.*,
355 F.3d 386, 387 (5th Cir. 2004) (damages for emotional/mental distress not recoverable under
Article 19 of the Warsaw Convention); *Trans World Airlines, Inc. v. Christophel*, 500 S.W.2d
409, 411 (Ky. Ct. App. 1973) (rejecting a claim for mental anguish damages under Article 19 of
the Warsaw Convention).

10

11

12

13

14

15

**Analysis:**  Damages for delay under the Warsaw Convention must be directly tied to an

16

individual's late arrival at their destination.   Plaintiffs' delay claim is brought under Article 19 of

17

the Warsaw Convention, which provides that "[t]he carrier shall be liable for damage occasioned

18

by delay in the transportation by air of passengers, baggage, or goods."  Article 24 provides that

19

"the cases covered by articles 18 and 19 any action for damages, however founded, can only be

20

brought subject to the conditions and limits set out in this convention." *Id.*, Art. 24.

21

        The plain language of Article 19 suggests that delay damages must be directly tied to a

22

plaintiffs' late arrival at the destination airport. Courts have so construed the meaning of "delay"

23

damages.  For example, the court in *Smith v. Peidmont Aviation, Inc.,* 567 F.2d 290, 292 (5th Cir.

24

1978), held that cost of making alternative travel arrangements was one type of delay damage

25

contemplated by the Warsaw Convention.  The court in *Lopez v. E. Airlines, Inc.*, 677 F. Supp.

26

181, 183 (S.D.N.Y. 1988) held that the plaintiffs' loss of time was another type of delay damage

27

contemplated under Warsaw. In *Daniel v. Virgin Atl. Airways, Ltd.*, 58 F. Supp. 2d 986, 992

28

(N.D. Cal. 1998), the court held that damages for "inconvenience" were another type legally cognizable loss under the Convention.

These are the types of limited damages that plaintiffs are entitled to if they prevail on their delay claim—i.e., those that are directly connected to their delayed arrival in Las Vegas: (1) damages for the cost of making alternative travel arrangement; (2) damages for a limited loss of time; (3) damages for purported inconvenience; and (4) any other damages directly tied to their late arrival in Las Vegas (as opposed to the circumstances that resulted in their delay). No court has held that the Warsaw Convention contemplates damages to a delayed passenger's reputation—a mere late arrival, in and of itself, would not damage anyone's reputation. Moreover, damages for emotional injuries are not available under the Warsaw Convention. *Daniel*, 59 F. Supp.2d at 992 ("this Court cannot logically find that damages for purely emotional injuries caused by delayed arrival are available under the Convention.") Proposed Special Jury Instruction No. 10 properly encompasses Warsaw delay damages, and should be given as requested.

Given as Requested:     _____

Given as Modified:      _____

Refused:                _____

Withdrawn:              _____

_____
JUDGE OF THE DISTRICT COURT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**39.    SPECIAL JURY INSTRUCTION NO. 11:  PREEMPTED DAMAGES**

Captain Swanigan's statements to the Reno Police at the Reno airport were made during the process of disembarking the plaintiffs from Flight 694.  Plaintiffs cannot recover any damages, other than those directly tied to their delay, related to Captain Swanigan's report to the Reno Police.

**Authority:**  *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 873 (9th Cir. 2010) ("It is thus fair to say that the pilot's statements to the police were part of the disembarkation process. Considering 'the total circumstances surrounding [plaintiffs'] injuries, viewed against the background of the intended meaning of Article 17,' we conclude that the crew's report to the police was covered by the Warsaw Convention.") (citations omitted); Warsaw Convention, art. 17; *Maugnie v. Compagnie Nationale Air France*, 549 F.2d 1256, 1257, 1262 (9th Cir.1977).

**Analysis:**  The Ninth Circuit held that Captain Swanigan's statements to the Reno Police department were made during "disembarkation" and damages stemming from those statements were therefore preempted by the Warsaw Convention.  *Eid*, 621 F.3d at 873 ("It is thus fair to say that the pilot's statements to the police were part of the disembarkation process. Considering 'the total circumstances surrounding [plaintiffs'] injuries, viewed against the background of the intended meaning of Article 17,' we conclude that the crew's report to the police was covered by the Warsaw Convention.") (citations omitted).  This holding constitutes the law of the case.  "The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir.1993).  Accordingly, Proposed Special Jury Instruction No. 11 should be given as requested.

Given as Requested:    _____

Given as Modified:    _____

Refused:    _____

Withdrawn:    _____

_____
JUDGE OF THE DISTRICT COURT

**40.      SPECIAL JURY INSTRUCTION NO. 12:  DELAY DAMAGES CAP**

Unless Plaintiffs have proven that Alaska Airlines' actions constituted "willful misconduct," any damages you award Plaintiffs under Article 19 of the Warsaw Convention may not exceed 16,600 Special Drawing Rights ("SDRs") per Plaintiff.  An SDR is the monetary unit of the International Monetary Fund.  An award of 16,600 SDRs is the equivalent of approximately $25,500.

**Authority:**  Additional Protocol No. 2 to amend the Convention for the Unification of Certain Rules Relating to International Carriage by Air signed at Warsaw on 12 October 1929 as amended by the Protocol done at The Hague on 28 September 1955, art. 22(1), Sept. 25, 1975, 2097 U.N.T.S 69.

**Analysis:**  Plaintiffs claims for damages related to their delay in transportation are governed by Article 19 of Warsaw Convention.  The Warsaw Convention limits the amount of damages for Article 19 delay available to plaintiffs.  Article 22(1) provides, that "[i]n the carriage of persons the liability of the carrier for each passenger is limited to the sum of 16,600 Special Drawing Rights."  Article 25 provides that the "limits of liability in Article 22 shall not apply if it is proved that the damages resulted from an act of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result[.]"  Proposed Special Jury Instruction No. 12 is faithful to the language in the articles applicable to plaintiffs' claims for damages under Article 19 of the Warsaw Convention.  Plaintiffs must prove "willful misconduct" in order to "break" the Warsaw damages cap contained in Article 22(1).  Accordingly, proposed Special Jury Instruction No. 12 should be given as requested.

Given as Requested:     _____

Given as Modified:     _____

Refused:     _____

Withdrawn:     _____

_____
JUDGE OF THE DISTRICT COURT

**41.    SPECIAL JURY INSTRUCTION NO. 13:  WILLFUL MISCONDUCT**

In order to prove "willful misconduct," Plaintiffs must prove that Alaska Airlines intended to cause Plaintiffs' damages, or that Alaska Airlines acted recklessly with knowledge that damage to Plaintiffs would probably result.

**Authority:**  Montreal Protocol No. 4; *Carey v. United Airlines*, 255 F.3d 1044, 1050 (9th Cir. 2001).

**Analysis**:  Plaintiffs claims for damages related to their delay in transportation are governed by Article 19 of Warsaw Convention.  Article 25 provides that Warsaw's liability limits shall not apply "if it is proved that the damages resulted from an act of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result[.]"  The Ninth Circuit has explained that willful misconduct under the Convention means "the intentional performance of an act with knowledge that the [] act will probably result in injury or damage", or "the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences." *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir.1987).  Because proposed Special Jury Instruction No. 13 mirrors the text of Article 25, and is faithful to the case law interpreting Article 25, it should be given as requested.

Given as Requested:  _____

Given as Modified:  _____

Refused:  _____

Withdrawn:  _____

_____
JUDGE OF THE DISTRICT COURT

1   **42.   DEFAMATORY COMMUNICATION:  DEFINITION**

2          A communication is defamatory if it tends so to harm the reputation of the plaintiff as to

3   lower him or her in the estimation of the community or to deter third persons from associating or

4   dealing with him or her.

5          Words or conduct or the combination of words and conduct can communicate defamation.

6   **Authority:  Nevada Civ. Jury Inst. ─ Intentional Torts 6IT.10 (2011).**

7   **Analysis:**  Nevada substantive law governs plaintiffs' state-law defamation claims.  Jury

8   Instruction No. 42 is the Nevada Pattern Jury Instruction defining "defamatory communication."

9   It therefore should govern the jury's determination of whether the statements made by Alaska

10  Airlines' that form the bases for plaintiffs' state-law claims are in fact defamatory.

11         The Nevada Pattern Jury Instructions are published by the State Bar of Nevada.  "They are

12  designed to tell a jury what must be proven in order for a party to prevail."  Nevada Jury

13  Instructions – Civil, 2011 Edition, p. iii.  Nevada Pattern Jury Instructions present a succinct

14  summation of Nevada law on a given issue.  Proposed Jury Instruction No. 42 should therefore be

15  given as requested.

16

17  Given as Requested:   _____

18  Given as Modified:   _____

19  Refused:           _____

20  Withdrawn:         _____

21

22                                    _____
                                      JUDGE OF THE DISTRICT COURT

23

24

25

26

27

28

1

**44.     SPECIAL JURY INSTRUCTION NO. 15:  DEFAMATION DEFENSES**

2

A true statement is not defamatory.  A statement of opinion is not defamatory.

3

4

**Authority:**  *Pope v. Motel 6*, 114 P.3d 277, 282 (Nev. 2005) ("A defamation claims requires demonstrating (1) a *false* and defamatory statement of fact by the defendant concerning the

5

plaintiff") (emphasis added); *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002) ("Statements of opinion cannot be defamatory").

6

7

**Analysis:**  Nevada substantive law governs plaintiffs' state-law defamation claims.  Under

8

Nevada law, a statement that is true is not defamatory.  *Pope*, 114 P.3d at 282.  Additionally,

9

statements of opinion are not defamatory.  *Pegasus*, 57 P.3d 82 at 87.  Because proposed Special

10

Jury Instruction No. 15 is faithful to well-established Nevada law, it should be given as requested.

11

12

Proposed Special Jury Instructions

13

14

Given as Requested:    _____

15

Given as Modified:    _____

16

Refused:        _____

17

Withdrawn:      _____

18

19

_____

20

JUDGE OF THE DISTRICT COURT

21

22

23

24

25

26

27

28

**45. SPECIAL JURY INSTRUCTION NO. 16: CLAIMS SUBJECT TO LAW ENFORCEMENT REPORTING PRIVILEGE**

Plaintiffs' following defamation claims are subject to the law enforcement reporting privilege:

- Plaintiffs' [second claim for relief] concerning Frank Raymond's e-mail to the Federal Air Marshalls.

- Plaintiffs' [eighth and ninth claims for relief] concerning Captain Majer's Chief Pilot Newsletter.

**Authority:** *Pope v. Motel 6*, 114 P.3d 277, 284 (Nev. 2005).

**Analysis:** Nevada substantive law governs plaintiffs' state-law defamation claims. Under Nevada law, applicability of a privilege is a matter of law for the court to decide. *See Clark Cnty. School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 382 (Nev. 2009) ("the applicability of the absolute privilege is a matter of law for the court to decide"). The court should find that the law-enforcement reporting privilege applies to plaintiffs' second, eighth, and ninth claims for relief because the communication was made by Alaska Airlines to a person or entity involved in law enforcement.[1] *Pope*, 114 P.3d at 284. Plaintiffs do not dispute that the referenced claims are subject to the law enforcement reporting privilege. Accordingly, the Court should instruct plaintiffs that the law enforcement reporting privilege applies to these claims. Proposed Special Jury Instruction No. 16 should be given as requested.

Given as Requested:    _____

Given as Modified:    _____

Refused:    _____

Withdrawn:    _____

_____
JUDGE OF THE DISTRICT COURT

_____

[1] The parties anticipate coming to a stipulation regarding whether a privilege applies to a given claim.

**46.    SPECIAL JURY INSTRUCTION NO. 17:  CLAIMS SUBJECT TO INTRACORPORATE COMMUNICATIONS PRIVILEGE**

Plaintiffs' following defamation claims are subject to the law enforcement reporting privilege:

- Plaintiffs' [fifth claim for relief] concerning Angela Kelly's e-mail to Mary Ryding and John Severski.
- Plaintiffs' [sixth claim for relief] concerning Mary Ryding's email to John Severski and Angela Kelly.
- Plaintiffs' [seventh claim for relief] concerning Dennis Mellen's e-mail to Angela Kelly.
- Plaintiffs' [eighth and ninth claims for relief] concerning Captain Majer's Chief Pilot Newsletter.

**Authority:**  *Pope v. Motel 6,* 114 P.3d 277, 284 (Nev. 2005).

**Analysis:**  Nevada substantive law governs plaintiffs' state-law defamation claims.  Under Nevada law, applicability of a privilege is a matter of law for the court to decide.  *See Clark Cnty. School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 382 (Nev. 2009) ("the applicability of the absolute privilege is a matter of law for the court to decide").  The court should find that the intra-corporate communications privilege applies to plaintiffs' fifth, sixth, seventh, eighth, and ninth claims for relief because the communications at issue were made solely between Alaska Airlines' agents and/or employees in the regular course of Alaska Airlines' business.[2]  *Pope*, 114 P.3d at 284.  Plaintiffs do not dispute that the referenced claims are subject to the intracorporate communications privilege. Accordingly, the Court should instruct plaintiffs that the intracorporate communications privilege applies to these claims.

///

///

///

---

[2] The parties anticipate coming to a stipulation regarding whether a privilege applies to a given claim.

1    Proposed Special Jury Instruction No. 17 should be given as requested.

2    Given as Requested:    _____

3    Given as Modified:    _____

4    Refused:    _____

5    Withdrawn:    _____

6

7                                            _____
                                             JUDGE OF THE DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**47.   SPECIAL JURY INSTRUCTION NO. 18: CLAIMS SUBJECT TO COMMON INTEREST PRIVILEGE**

Plaintiffs' following defamation claims are subject to the common interest privilege:

- Plaintiffs' [second claim for relief] concerning Frank Raymond's e-mail to the Federal Air Marshalls.

- Plaintiffs' [fifth claim for relief] concerning Angela Kelly's e-mail to Mary Ryding and John Severski.

- Plaintiffs' [sixth claim for relief] concerning Mary Ryding's email to John Severski and Angela Kelly.

- Plaintiffs' [seventh claim for relief] concerning Dennis Mellen's e-mail to Angela Kelly.

- Plaintiffs' [eighth and ninth claims for relief] concerning Captain Majer's Chief Pilot Newsletter.

**Authority:**  *Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983) (qualified privilege arises under Nevada law when publication of a statement is made to persons sharing a common interest).

**Analysis:**  Nevada substantive law governs plaintiffs' state-law defamation claims.  Under Nevada law, applicability of a privilege is a matter of law for the court to decide.  *See Clark Cnty. School Dist. v. Virtual Educ. Software, Inc.*, 125 Nev. 374, 382 (Nev. 2009) ("the applicability of the absolute privilege is a matter of law for the court to decide").  The court should find that the common interest privilege applies to plaintiffs' second, fifth, sixth, seventh, eighth, and ninth claims for relief because the communications at issue were made by Alaska Airlines to a person or entity with a common interest in maintaining flight safety and security.[3] *Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983) (qualified privilege arises under Nevada law when publication of a statement is made to persons sharing a common interest).  Plaintiffs do not dispute that the referenced claims are subject to the common interest privilege.  Accordingly, the Court should instruct plaintiffs that the common interest privilege applies to these claims.

---

[3] The parties anticipate coming to a stipulation regarding whether a privilege applies to a given claim.

Proposed Special Jury Instruction No. 18 should be given as requested.

Given as Requested: _____

Given as Modified: _____

Refused: _____

Withdrawn: _____

_____
JUDGE OF THE DISTRICT COURT

**48.    SPECIAL JURY INSTRUCTION NO. 19: COMMON INTEREST PRIVILEGE**

Unless Plaintiffs have shown that Alaska Airlines acted with malice in fact, any statement the court has found to have been made by Alaska Airlines to a person or entity with a common interest in maintaining flight safety and security cannot be defamatory because it is protected by the common interest privilege.

**Authority:** *Circus Circus Hotels, Inc. v. Witherspoon*, 657 P.2d 101, 105 (Nev. 1983) (qualified privilege arises under Nevada law when publication of a statement is made to persons sharing a common interest).

**Analysis**: Nevada substantive law governs plaintiffs' state-law defamation claims.  Under Nevada law, if an allegedly defamatory communication is made between persons who share a common interest, a qualified privilege arises.  *Circus Circus Hotels, Inc.*, 657 P.2d at105 (qualified privilege arises under Nevada law when publication of a statement is made to persons sharing a common interest).  Plaintiffs do not dispute that the referenced claims are subject to the common interest privilege.  A plaintiff may overcome this qualified privilege only by showing that the communication was made with actual malice.  *Id.*   Proposed Special Jury Instruction No. 19 is an accurate statement of Nevada substantive law concerning a plaintiff's burden in overcoming the common-interest privilege.  Accordingly, it should be given as requested.

Given as Requested:   _____

Given as Modified:   _____

Refused:        _____

Withdrawn:      _____


_____
JUDGE OF THE DISTRICT COURT

**49.    SPECIAL JURY INSTRUCTION NO. 20:  INTRA-CORPORATE COMMUNICATIONS PRIVILEGE**

Unless Plaintiffs have shown that Alaska Airlines acted with malice in fact, any statement the court has found to have been made solely between Alaska Airlines' agents and/or employees in the regular course of Alaska Airlines' business cannot be defamatory because it is protected by the intra-corporate communications privileges.

**Authority:**  *Pope v. Motel 6,* 114 P.3d 277, 284 (Nev. 2005).

**Analysis**: Nevada substantive law governs plaintiffs' state-law defamation claims.  Under Nevada law, statements that the court has found to have been made solely between Alaska Airlines' agents and/or employees in the regular course of Alaska Airlines' business are protected by a qualified privilege. *Pope,* 114 P.3d at 284.  Plaintiffs do not dispute that the referenced claims are subject to the intracorporate communications privilege.  A plaintiff may overcome this qualified privilege only by showing that the communication was made with actual malice.  *Id.*   Proposed Special Jury Instruction No. 20 is an accurate statement of Nevada substantive law concerning a plaintiff's burden in overcoming the intracorporate communications privilege.  Accordingly, it should be given as requested.


Given as Requested:  _____

Given as Modified:   _____

Refused:          _____

Withdrawn:         _____


_____
JUDGE OF THE DISTRICT COURT

**50.     SPECIAL JURY INSTRUCTION NO. 21:  LAW ENFORCEMENT REPORTING PRIVILEGE**

Unless Plaintiffs have shown that Alaska Airlines acted with malice in fact, any statement the court has found to have been made by Alaska Airlines to a person or entity involved in law enforcement cannot be defamatory because it is protected by the law enforcement reporting privilege.

**Authority:**  *Pope v. Motel 6*, 114 P.3d 277, 284 (Nev. 2005).

**Analysis**:  Nevada substantive law governs plaintiffs' state-law defamation claims.  Under Nevada law, statements that have been made by Alaska Airlines to a person or entity involved in law enforcement are protected by a qualified privilege. *Pope,* 114 P.3d at 284.  Plaintiffs do not dispute that the referenced claims are subject to the law enforcement reporting privilege.  A plaintiff may overcome this qualified privilege only by showing that the communication was made with actual malice.  *Id.*   Proposed Special Jury Instruction No. 21 is an accurate statement of Nevada substantive law concerning a plaintiff's burden in overcoming the law enforcement reporting privilege.  Accordingly, it should be given as requested.


Given as Requested:   _____

Given as Modified:   _____

Refused:        _____

Withdrawn:       _____


_____
JUDGE OF THE DISTRICT COURT

**51.    SPECIAL JURY INSTRUCTION NO. 22: MALICE IN FACT DEFINITION**

Malice in fact is a stringent standard proven by demonstrating that a statement is

published with knowledge that it was false or with reckless disregard for its truth.

**Authority:**  *Pope v. Motel 6*, 114 P.3d 277, 284 (Nev. 2005) ("Actual malice is a stringent standard that is proven by demonstrating that 'a statement is published with knowledge that it was false or with reckless disregard for its veracity.'")

**Analysis**:  Nevada substantive law governs plaintiffs' state-law defamation claims.  In order to

prevail on their defamation claims, plaintiffs must overcome various qualified privileges (*see*

*supra*, Proposed Jury Instruction Nos. 16-21 concerning the law enforcement reporting privilege,

common interest privilege, and/or intracorporate communications privilege).  To overcome these

privileges under Nevada law, plaintiffs must show that Alaska Airlines acted with malice in fact.

*Pope v. Motel 6*, 114 P.3d at 283-284 ("Under a qualified privilege, the plaintiff must prove . . .

the defendant abused the privilege by publishing the defamatory communication with actual

malice").  The Nevada Supreme Court holds that in order to demonstrate actual malice, a plaintiff

must show that when the defendant published the alleged defamation he "acted with reckless

disregard for [its] veracity or with knowledge of [its] falsity."  *Id.* at 284.  Under Nevada law,

"[a]ctual malice is a stringent standard that is proven by demonstrating that 'a statement is

published with knowledge that it was false or with reckless disregard for its veracity.'"  *Id.*

Accordingly, proposed Special Jury Instruction No. 22 should be given as requested.


Given as Requested:  _____

Given as Modified:  _____

Refused:  _____

Withdrawn:  _____


_____
JUDGE OF THE DISTRICT COURT

DEFENDANT ALASKA AIRLINES, INC.'S SUPPORT FOR DISPUTED JURY INSTRUCTIONS

**52.   DAMAGES: LOST PROFITS**

Lost profits resulting from a breach of contract may be awarded as damages if the nature of the contract, the performance of similar contracts, a record of past profits of an established enterprise, or other evidence provides a valid basis for determining future profits with reasonable certainty.  Future profits are not inherently speculative and are an appropriate measure of damages so long as the evidence provides a basis for determining, with reasonable certainty, what the profits would have been had the contract not been breached.

If the evidence permits an award of lost profits, gross profits lost should be awarded if the expenses of the party seeking damages remained constant and there is no evidence demonstrating that they saved any expenses by not having to render a return performance due to another party's breach of contract.  On the other hand, an award of net profits lost rather than gross profits lost is proper where the evidence demonstrates that overhead and/or other expenses were reduced as a result of another party's breach of contract.

**Authority:  Nevada Civ. Jury Inst. ─ Contracts CN.47 (2011).**

**Analysis:**  Nevada substantive law governs plaintiffs' claims for damages related to their state law defamation claims.  Plaintiffs have indicated that they will seek damages related to loss profits stemming from their state-law defamation claims.  Jury Instruction No. 52 is the Nevada Pattern Jury Instruction concerning damages for lost profits, and therefore should govern the jury's lost profits analysis.  The Nevada Pattern Jury Instructions are published by the State Bar of Nevada.  "They are designed to tell a jury what must be proven in order for a party to prevail." Nevada Jury Instructions – Civil, 2011 Edition, p. iii.  Nevada Pattern Jury Instructions present a succinct summation of Nevada law on a given issue.

///

///

///

///

///

///

1    Proposed Jury Instruction No. 52 should therefore be given as requested.

2

3    Given as Requested:    _____

4    Given as Modified:    _____

5    Refused:    _____

6    Withdrawn:    _____

7

8                                        _____
                                         JUDGE OF THE DISTRICT COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**53.    DAMAGES: UNCERTAINTY AS TO AMOUNT**

A party seeking damages has the burden of proving both that they did, in fact, suffer injury and the amount of damages resulting from that injury.  The amount of damages need not be proved with mathematical exactitude, but the party seeking damages must provide an evidentiary basis for determining a reasonably accurate amount of damages.  There is no requirement that absolute certainty be achieved; once evidence establishes that the party seeking damages did, in fact, suffer injury, some uncertainty as to the amount of damages is permissible.  However, even if it is provided by an expert, testimony that constitutes speculation not supported by evidence is not sufficient to provide the required evidentiary basis for determining a reasonably accurate award of damage.

**Authority:  Nevada Civ. Jury Inst. ─ Contracts CN.48 (2011)**

**Analysis:**  Nevada substantive law governs plaintiffs' claims for damages related to their state law defamation claims.  Plaintiffs have indicated that they will seek damages related to their state-law defamation claims.  Jury Instruction No. 53 is the Nevada Pattern Jury Instruction concerning uncertainty in the amount of damages, and therefore should govern the jury's damages finding.  The Nevada Pattern Jury Instructions are published by the State Bar of Nevada.  "They are designed to tell a jury what must be proven in order for a party to prevail."   Nevada Jury Instructions – Civil, 2011 Edition, p. iii.  Nevada Pattern Jury Instructions present a succinct summation of Nevada law on a given issue.  Proposed Jury Instruction No. 53 should therefore be given as requested.


Given as Requested:   _____

Given as Modified:    _____

Refused:              _____

Withdrawn:            _____



_____
JUDGE OF THE DISTRICT COURT

1

2   Dated: February 5, 2013                    MORRISON & FOERSTER LLP

3

4                                             By:  _____William V. O'Connor, Jr._____
                                                     William V. O'Connor, Jr.

5                                             Attorneys for Defendant
                                              ALASKA AIRLINES, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28