FILED ___ RECEIVED
___ ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

JUN 27 2013

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REDA A. GINENA, NAHID I. GINENA, AMRE R. GINENA, SABRINA KOBERT, M. MAGDY RASIKH, M. SAMIR MANSOUR, AZZA EID, NAZMI M. NAZMI, and HEBA NAZMI,<br><br>Plaintiffs,<br><br>v.<br><br>ALASKA AIRLINES, INC.,<br><br>Defendant. | 2:04-CV-01304-MMD-CWH<br><br>ORDER |

Before the court is Defendant Alaska Airlines, Inc.'s ("Alaska") Motion for Attorney's Fees (#398[1]). The above-named plaintiffs have responded (#420), and Alaska has replied (#424). Also before the court is Alaska's unopposed Motion to Seal its Motion for Attorney's Fees (#396).

**I.   Facts and Procedural History**

After eight years, three district court judges, two trips to the Ninth Circuit, and one two-week trial, a jury returned a verdict in favor of Alaska (#390). This case arises out of the September 29, 2003 diversion of Alaska Airlines Flight 694, on which Plaintiffs were traveling from

---

[1] Refers to the court's docket number.

Vancouver, British Columbia to Las Vegas, Nevada.[2] Following an in-flight disturbance involving a number of Plaintiffs, the pilot diverted Flight 694 to Reno.

Plaintiffs initially brought suit in September 2004 alleging five claims for relief, including a claim for delay under the Convention for the Unification of Certain Rules Relating to International Carriage by Air, Oct. 12, 1929, 49 Stat. 3000 ("Warsaw Convention") and various state law torts. (Complaint #1.) Judge Jones granted Alaska's motion to dismiss the state law claims (#42), and Plaintiffs moved for leave to file a supplemental complaint alleging seven new defamation claims (#56). At the same time, Alaska moved for summary judgment on the Warsaw Convention claim (#58). On June 15, 2006, the court denied Plaintiffs leave to file the new claims and granted Alaska's motion for summary judgment (#114).

Plaintiffs appealed, and in August 2010, the Ninth Circuit reversed the grant of summary judgment, affirmed dismissal of one defamation claim, reversed dismissal of another, and affirmed the denial of leave to file a supplemental complaint. *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 875 (9th Cir. 2010). However, the Ninth Circuit directed the district court to determine if leave to file an *amended* complaint was appropriate. *Id.*

Thereafter, Plaintiffs filed a motion for leave to amend their complaint with the same seven defamation claims as in their supplemental complaint (#138). The court denied leave to amend for six out of the seven claims (the court allowed what the parties refer to as the "America West claim" to go forward) (##155, 210). This left three claims for trial: the Warsaw Convention claim, the defamation claim addressed by the Ninth Circuit, and the America West claim. After Alaska served Plaintiffs with a proposed Rule 11 motion, Plaintiffs voluntarily dismissed the claim addressed by the Ninth Circuit (#167).

Plaintiffs petitioned for a writ of mandamus challenging the decision denying leave to amend (*see* #215). On January 25, 2012, after briefing on the petition was completed, Alaska

---

[2] The relevant factual background is set forth in more detail in the court's order denying Plaintiffs' Motion for a New Trial (#429).

2

served an Offer of Judgment on Plaintiffs in the amount of $10,000 per plaintiff (#398-2). Plaintiffs did not accept the offer.

On February 12, 2012, the Ninth Circuit granted Plaintiffs' writ (#215). The Ninth Circuit ordered that the motion for leave to amend be granted. The parties therefore proceeded to trial on the Warsaw Convention claim and seven defamation claims.

As trial neared, Plaintiffs began voluntarily dismissing their defamation claims. First, Plaintiffs voluntarily dismissed the America West claim prior to the submission of the Joint Pretrial Order on December 5, 2012 (*see* #289). Second, Plaintiffs voluntarily dismissed two defamation claims on February 22, 2013 (#369)—just four days before the trial began. Third, Plaintiffs voluntarily dismissed three of the four remaining defamation claims near the conclusion of Plaintiffs' case following the first week of trial (#378).

On March 4, 2013, after nearly two weeks of testimony, the jury deliberated for less than three hours before returning a verdict in favor of Alaska on the Warsaw Convention claim and the remaining defamation claim (#387). Alaska now moves for attorney's fees relating to Plaintiffs' state law claims in the amount of $546,012.50 under Rule 68 of the Nevada Rules of Civil Procedure and under Nev. Rev. Stat. ("N.R.S.") § 17.115.

## II. Legal Standard

A party may move for attorney's fees under Federal Rule of Civil Procedure 54(d)(2), provided that the party specifies "the statute, rule, or other grounds entitling [it] to the award." When those grounds derive from state law and are advanced for fees relating to state law claims, the court will apply them. *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999).

Here, Alaska cites Nevada's Rule 68 and N.R.S. § 17.115 for fees relating to Plaintiffs' defamation claims. Under both Rule 68 and N.R.S. § 17.115, a defendant may serve a written offer "to allow judgment to be taken in accordance with" its terms and conditions. *See* Nev. R. Civ. P. 68(a); N.R.S. § 17.115(1). If, however, the offeree rejects the offer and "fails to obtain more

3

favorable judgment," the court may order the offeree to pay the offeror's reasonable attorney's fees incurred between the date of the offer and the date of entry of the judgment. *See* Nev. R. Civ. P. 68(f); *see also* N.R.S. § 17.115(4) (authorizing fees if the offeree "rejects an offer of judgment [and] fails to obtain a more favorable judgment").

The decision to award attorney's fees lies within the court's discretion. *Beattie v. Thomas*, 668 P.2d 268, 274 (Nev. 1983). However, in exercising its discretion, the court must evaluate four factors (though no single factor is determinative): "(1) whether the plaintiff's claim was brought in good faith; (2) whether the defendant's offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff's decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fees sought by the offeror are reasonable and justified in amount." *Id. See also Yamaha Motor Co., U.S.A. v. Arnoult*, 955 P.2d 661, 673 n.16 (Nev. 1998) (noting that no single factor is determinative). The court views these factors through the underlying policy of Rule 68: "to encourage litigants who receive offers of judgment to settle their lawsuits by forcing the offeree to balance the uncertainty of receiving a more favorable judgment against the risk of receiving a less favorable judgment and being forced to pay the offeror's costs and attorney's fees." *Lentz v. I.D.S. Fin. Servs., Inc.*, 890 P.2d 783, 785 (Nev. 1995) (quotation marks and citation omitted).

### III. Discussion

Plaintiffs do not dispute that Alaska made them an offer of judgment, nor that they rejected this offer. Instead, Plaintiffs mount three successive challenges to Alaska's Motion. First, Plaintiffs contend that the plain language of the offer of judgment precludes an award of attorney's fees. Second, Plaintiffs argue that the *Beattie* factors do not favor an award of attorney's fees. Finally, Plaintiffs request the exclusion of any fees relating to Plaintiffs' Warsaw Convention claim in the event of a fee award.

#### A. The Plain Language of the Offer of Judgment

Plaintiffs' first challenge fails. The language of the offer of judgment included the

following:

PLEASE TAKE FURTHER NOTICE that in the event any Plaintiff fails to accept this offer within fourteen (14) days of service of this offer and thereafter obtain [sic] a judgment for less than Alaska Airlines's offer, that Plaintiff may be required to pay the attorney's fees and costs of Alaska Airlines from the date of the offer, subject to the provisions of Rule 68 of the Federal Rules of Civil Procedure, Rule 68 of the Nevada Rules of Civil Procedure, and NRS 17.115.

(Plaintiffs' Response #402, Ex. A.) Plaintiffs argue that this language authorizes a fee award only if Plaintiffs had won a judgment in an amount less than the offer. This argument has four premises: first, the terms of the offer are controlling. *See* Nev. R. Civ. P. 68; N.R.S. § 17.115. Second, the rules of contract construction are used to interpret those terms. *See Fleischer v. August*, 737 P.2d 518, 521 (Nev. 1987). Third, the terms of Alaska's offer are patterned after the language of Federal Rule of Civil Procedure 68 (the federal analogue to Nevada's Rule 68). *See* Fed. R. Civ. P. 68(d) ("If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."). Fourth, the Supreme Court has interpreted the federal Rule 68 to be "inapplicable" to cases in which the defendant obtains judgment. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). Therefore, Plaintiffs conclude, a fee award under Alaska's offer of judgment is inappropriate where Alaska has obtained a favorable judgment.

This argument falters at the third and fourth premises. Nevada's Rule 68 mimics in relevant part the language of the federal Rule 68. *See* Nev. R. Civ. P. 68(f) ("If the offeree rejects an offer and fails to obtain a more favorable judgment, . . . the offeree shall pay the offeror's . . . reasonable attorney's fees."). It is therefore impossible to tell whether Alaska's offer of judgment is patterned after Nevada's Rule 68 or the federal Rule 68. This difficulty imperils Plaintiffs' fourth premise: the Nevada Supreme Court has rejected the *Delta Air Lines* interpretation for Nevada's Rule 68. Construing that Rule, the Nevada Supreme Court held, "We decline to follow the *Delta Air Lines* reasoning, not only because of the differences between NRCP 68 and FRCP 68, but because such reasoning leads to an anomalous result." *Beattie*, 668 P.2d at 588. Instead, the Court held that Nevada's Rule 68 "encompasses a judgment against the offeree." *MRO*, 197 F.3d at 1281. Thus,

5

Plaintiffs have failed to show that the plain language of Alaska's offer of judgment precludes a fee award where Alaska has obtained a favorable jury verdict.

Moreover, the ordinary rules of contract construction (invoked in the second premise) undermine Plaintiffs' argument. Plaintiffs invite the court to make a negative inference from "if the plaintiff obtains judgment, fees may be awarded" to "if the defendant obtains judgment, fees may not be awarded." But even *Delta Air Lines* did not go that far. Rather, the *Delta Air Lines* Court concluded that the federal Rule 68 was silent on the subject of defense judgments. *Delta Air Lines, Inc.*, 450 U.S. at 352. Thus, even if Plaintiffs were correct that Alaska's offer of judgment was patterned after the federal Rule 68, that would not end the inquiry. Rather, since (under Plaintiffs' interpretation) Alaska's offer of judgment was silent on the contingency of a defense verdict, the court would need to supply a "reasonable term" to fill this gap.[3] *See* Restatement (Second) of Contracts § 204 (1981). Nevada's default offer-of-judgment rule is that reasonable term.

### B. The *Beattie* Factors

Plaintiffs' challenge to Alaska's application of the *Beattie* factors is similarly unsuccessful. The first factor is whether Plaintiffs' claims were brought in good faith. *Beattie*, 668 P.2d at 274. Alaska points out that Plaintiffs voluntarily dismissed one of their defamation claims in response to Alaska's proposed Rule 11 motion, and Plaintiffs voluntarily dismissed all but one of their remaining defamation claims on the eve—or in the midst—of trial. Such late-in-the-game dismissals may give rise to an inference that these claims were not brought in good faith. *See Bergmann v. Boyce*, 856 P.2d 560, 563 (Nev. 1993). Under Nevada law, a claim is "groundless" if "the complaint contains allegations sufficient to survive a motion to dismiss for failure to state a claim, but which are not supported by any credible evidence at trial." *Id.* (citing *Fountain v. Mojo*, 687 P.2d 496, 501 (Colo. Ct. App. 1984)). Plaintiffs' voluntarily dismissed claims fit this description neatly.

---

[3] Importantly, under Plaintiffs' interpretation, the offer is *not* ambiguous with respect to the contingency of a defense verdict. It is simply silent.

6

In response, Plaintiffs cite one case in which voluntarily dismissed claims did not give rise to a finding of bad faith. *See Assurance Co. of Am. v. Nat'l Fire & Marine Ins. Co.*, 2012 WL 6626809 at *3 (D. Nev. Dec. 19, 2012). But *Assurance Co.* did not involve the kind of last-minute dismissals at issue here. *Id.* Timing matters because the longer Plaintiffs waited to dismiss their groundless claims, the more time and resources Alaska and the court had to expend on them. *See Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006) (finding bad faith where plaintiff continued to "prolong[] meritless claims"). Thus, the policy behind Rule 68—"to save time and money for the court system, the parties, and the taxpayer by rewarding the party who makes a reasonable offer and punishing the party who refuses to accept such an offer"—weighs in favor of a finding of bad faith. *Albios v. Horizon Communities, Inc.*, 132 P.3d 1022, 1029 (Nev. 2006). Plaintiffs suggest that the decision to dismiss these claims was "a tactical decision to streamline the trial to allow for efficient presentation of the most important claims for relief." (Plaintiffs' Response #420 at 10:13-14.) Yet Plaintiffs provide no explanation as to why they could not reasonably make such a decision earlier.

Plaintiffs remaining arguments are without merit. For example, Plaintiffs contend that the Ninth Circuit blessed their defamation claims by granting the writ of mandamus, but this argument decidedly mischaracterizes the Ninth's Circuit's ruling. Rather, the Ninth Circuit addressed only two issues: whether the statute of limitations barred the defamation claims, and whether intra-corporate communications were "publications" within the meaning of Nevada defamation law. (Order of the Ninth Circuit #215.) The Ninth Circuit had no occasion to review the "groundlessness" of the voluntarily dismissed defamation claims—nor could it have, given the procedural posture of the matter on which it was ruling. Plaintiffs also argue, citing the delay claim, that the complexity of their case militates against a finding of bad faith. (Plaintiffs' Response #420, p. 11:19-21.) However, Alaska does not allege that the delay claim was made in bad faith, noting instead that "[t]he prosecution of one colorable claim does not excuse the prosecution of five groundless claims." (Alaska's Mot. for Atty's Fees #398, p. 9:19-20 (citing

7

*Bergmann*, 856 P.2d at 563).) Plaintiffs have therefore failed to show that their voluntarily dismissed defamation claims were unusually complex and, additionally, why this complexity warranted voluntary dismissal at trial but not earlier. Accordingly, the first *Beattie* factor weighs in favor of a fee award.

The second and third *Beattie* factors address the reasonableness of the defendant's offer and the "gross unreasonableness" of the plaintiff's rejection.[4] 668 P.2d at 274. Alaska offered Plaintiffs $10,000 per plaintiff, and Plaintiffs rejected this offer. Alaska claims that this offer is reasonable in light of its strong defenses to the defamation claims and the lack of credible evidence that Plaintiffs mustered to support their $39 million demand for damages with respect to these claims. (*See* O'Connor Decl. #398-1, ¶ 35.) In response, Plaintiffs argue that the offer was unreasonable without a formal apology, that their rejection was reasonable in light of their damages demand, and that they continued to engage in settlement efforts.

Alaska's offer was reasonable. At trial, Plaintiffs hung the success of their defamation claim almost entirely on the alleged lack of credibility of an Alaska employee. Recognizing the weakness of Plaintiffs' claim, Alaska's offer of $10,000 was reasonable even in the face of Plaintiffs' multi-million dollar demand. Furthermore, Plaintiffs provided no admissible evidence of economic damages (despite initially demanding $20 million in such damages), and the only evidence relating to injury to reputation and emotional distress consisted of their own testimony—testimony that often confirmed that Plaintiffs still enjoyed good reputations. (*See, e.g.*, O'Connor Decl. #398-1 at ¶ 34; 4 Trial Transcript pp. 74-75.) Alaska therefore properly discounted Plaintiffs' damages demand by the substantial likelihood of a defense verdict and by Plaintiffs' absent or unreliable damages evidence.

Though it is a closer question, Plaintiffs rejection of Alaska's offer was, at least, not "grossly unreasonable." *See Beattie*, 668 P.2d at 274. "Grossly unreasonable or bad faith rises to a

---

[4] Plaintiffs do not argue that the timing of Alaska's offer was unreasonable, and therefore the court sets the issue of timing aside. *See Beattie*, 668 P.2d at 274.

8

much higher level than poor judgment or incorrect tactical decisions." *Assurance Co.*, 2012 WL 6626809 at *3. First, while Plaintiffs were not entitled to an apology even in the counterfactual event of their victory at trial, *McKee v. Turner*, 491 F.2d 1106, 1107 (9th Cir. 1974) ("We are not commissioned to run around getting apologies."), Plaintiffs consistently demanded an apology as a condition of settlement. (*See, e.g.*, McHugh Decl. #420-1, ¶ 15.) Second, Plaintiffs possessed a good-faith belief that they had lost significant standing with the Egyptian government as a result of the law enforcement investigation following the diversion of Flight 694. (*See id.* at ¶ 6.) Third, Plaintiffs continued to participate in settlement negotiations. (*Id.* at ¶ 14.) Fourth, at the time of the offer, Plaintiffs had yet to conduct discovery on the newly added defamation claims. (*Id.* at ¶ 17.) Perhaps Plaintiffs' multi-million dollar demand was grossly unreasonable, but the belief that they could recover more than $10,000 apiece was not.

The final *Beattie* factor addresses the reasonableness of the fees sought. 668 P.2d at 274. Plaintiffs mount only two challenges to the reasonableness of Alaska's fees: first, that a fee award is inappropriate for claims that were not part of the suit at the time Alaska made the offer of judgment, and second, that a fee award is inappropriate for work related to the delay claim. In particular, Plaintiffs do not challenge the reasonableness of Alaska's fees as viewed through the factors outlined in Local Rule 54-16 (listing, in relevant part, results obtained and the amount involved; skill requisite to perform the legal service properly; experience, reputation, and ability of the attorneys; nature and length of the professional relationship with the client; customary fee; description of the work performed by defense counsel and summary of the time and labor required; and the novelty and difficulty of the questions involved).

With respect to Plaintiffs' first challenge, they argue that attorney's fees are only available for the claims pending at the time of the offer of judgment because the language of the offer did not refer to "any and all present and future claims for relief." (Plaintiffs' Response #420, p. 22:25-26.) Since Plaintiffs claim that "ambiguities are construed against the offeror," citing *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833 (9th Cir. 1997), Alaska's offer ought to be interpreted as

referring only to then-pending claims for relief.

Plaintiffs have misleadingly cited *Nusom* and the other cases on which they rely.[5] The sentence immediately after the above quotation is the following: "But Rule 68 offers differ from contracts with respect to attorney fees . . . as to them, any waiver or limitation must be clear and unambiguous." *Id*. And the *Nusom* court also noted, on the same page, that "in general, defendants making a Rule 68 offer contemplate a lump-sum judgment that represents their *total liability*." *Id*. (emphasis added). These two propositions establish that an offer of judgment generally refers to the defendant's liability for the entire case, not only to the defendant's liability as alleged at the time the offer is made. *See also In re Estate & Living Trust of Miller*, 216 P.3d 239, 242 (Nev. 2009) (holding that "judgment" in Nevada's Rule 68 "does not end in district court but continues until the case is resolved"). Furthermore, under *Nusom*, if the defendant were to waive its ability to recover attorney's fees for claims added after the offer of judgment was made, it would need to effect this waiver clearly and unambiguously. Here, Alaska made no such waiver. Finally, Plaintiffs' proposed interpretation contravenes Rule 68's "policy of promoting settlement" by encouraging piecemeal rather than global settlement offers. *In re Estate & Living Trust of Miller*, 216 P.3d at 242. Alaska may therefore recover attorney's fees under Nevada's Rule 68 and N.R.S. § 17.115 for all Plaintiffs' state law claims.

### C. Apportionment

However, Plaintiffs have successfully argued that Alaska should not recover attorney's fees under Nevada's Rule 68 and N.R.S. § 17.115 for their delay claim. *See Gallagher v. Crystal Bay Casino, LLC*, 2012 WL 1409244 at *6 (D. Nev. Apr. 20, 2012) ("Nevada law cannot provide a basis for an award of attorney's fees on a federal . . . claim."). Accordingly, the court must determine the correct apportionment of attorney's fees.

---

[5] Besides *Nusom*, Plaintiffs also rely on *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390, 393 (7th Cir. 1999). But there, the court stated, "We reject . . . *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833–34 (9th Cir.1997)." Plaintiffs make no attempt to address or reconcile this contradiction.

10

The court finds that Alaska is entitled to two-thirds of its requested attorney's fees.[6] First, trial work addressed the delay claim and the defamation claim in (roughly) equal measure. Second, by all accounts, the delay claim was more complex than any of the defamation claims. Third, the voluntarily dismissed defamation claims formed two distinct groups that largely concerned the same legal principles and the same evidence. These considerations support an apportionment that recognizes the significance of the delay claim while taking into account the predominating defamation claims. The court places such an apportionment at two-thirds.

## IV.  Conclusion

Alaska has demonstrated that the *Beattie* factors favor an award of attorney's fees.

IT IS THEREFORE ORDERED that Alaska's Motion for Attorney's Fees (#398) is GRANTED. Alaska is awarded $376,008.33.

IT IS FURTHER ORDERED that Alaska's Motion to Seal (#396) is GRANTED.

IT IS SO ORDERED.

DATED this 27th day of June, 2013.

/s/ Larry R. Hicks
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[6] The court appreciates that Alaska is requesting an already-discounted fee award. Alaska represents that the $564,012.50 request is approximately $735,000 less than the "actual value" of the fees incurred, owing to an arrangement with its insurer.

11